# OCTOBER TERM, 1865, AT DETROIT.

———•♦•———

## Valentine Crosswell v. The People.

*Rape, — what constitutes.* — Carnal knowledge of the person of a female over ten years of age, unaccompanied with any circumstance of force or fraud, does not constitute the crime of rape, either at common law or under the statutes of this State.

Where, therefore, a man had criminal connection with a woman of mature years, of good size and strength, but who was shown by the testimony to be in a state of *dementia*— not idiotic, but approaching towards it; and it appeared that no fraud or force was used by him. *Held*, That such act did not constitute the crime of rape.

*Heard July* 7.   *Decided October* 10.

Error to Kalamazoo Circuit.

The facts will be found sufficiently stated in the opinion.

*N. A. Balch* for plaintiff in error.

1. An assault with intent to commit rape always includes the design to use force to accomplish the object *at all hazards* on the part of the person making the assault, and of resistance of the most forcible kind on the part of the person assaulted. — *Rex v. Lloyd,* 7 *Car. and Payne,* 589 ; 2 *Swan,* 394.

In this case there is not the slightest evidence that any force was used or intended, or that any resistance was offered or intended. Where, then, is the assault, or where the intent? No force was needed, none intended. The intent, in a case like this, constitutes the crime:

the assault was simply the means. Without these two essentials, the crime charged could not have been committed. — 4 *Leigh*, 645.

There was no such offence at common law, as I have been able to discover. Our legislators have not created any, and if ever they do, they will then require that the pleader shall allege the character and condition of the female, the same as he is bound to in a case of a child under ten years of age. — *Comp. Laws*, 1506 – 1507, §20, ¶5730; *Barbour's Magistrate's Criminal Law*, 69; 1 *Russel on. Crimes*, 565; *People v. Enoch*, 13 *Wend.*, 159.

2. The Court erred in not charging the jury that if they found actual coition, then the intent merged in the offence actually committed. ' The respondent insists that the information in this cause is at common law, and not an .information under the statute. The statute provides that if any · person shall assault any female with intent to commit the crime of *rape*; and rape is defined to be ravishing and carnally knowing a female of the age of ten years and over, by *force, and against her will.*

It will be seen by this statute that carnally knowing and abusing a female child, under the age of ten years, is not a rape. No ravishment is included in the offence. It simply consists in knowledge. Apply the same principle to a case like this, and no ravishment is included; it is simply carnal knowledge. It is not by force, nor against her will.

3. The charge of the Court under the seventh assignment of errors, the respondent contends, was wrong in this; that it instructs the jury that if the female was suffering under such a diseased state of mind as to have no intelligent will to oppose, then the crime charged was committed — a proposition, we think, wholly untenable. The crime might be fornication, if a single woman; adultery, if married; or it might be rape, if accomplished

with force. The law never presumes a man to intend to commit an enormous crime when his acts themselves may just as well be explained in the one of less aggravation. The only legitimate presumption is, that he intended to commit adultery; and this presumption exactly corresponds with the facts. The Court should, therefore, have instructed the jury, if they found the intent was simply to have sexual intercourse with the woman, and not to force her, then he must be acquitted. It by no means follows that the crime charged was committed, as the Court virtually instructed the jury, when all the facts and circumstances are more applicable to the commission of a different and less aggravated offence. — *Rex v. Jackson*, *Tr. Term R.*, 1822; *Russel v. Ryan*, 487; *Regina v. Saunders*, 8 *C. & P.*, 266; *Rex v. Williams*, 8 *Car. and Paine*, 286; *Rex v. Stanton*, 1 *Car and Kerwan*, 415; *Commonwealth v. Goodhue*, 2 *Met.*, 193.

When the offence, as · charged in this case, was the intent, that criminal intent must be proved, whatever may have been the mental· condition of the female; and the allegation of insanity was no excuse for not proving the intent and force. — *Rex . v. Stanton, Car and Ker. Rep.*, 215.

*A. Williams*, Attorney General, for The People.

1. Mrs. Crittenden, at the time the offence was committed, was insane, and, therefore, incapable of consenting. In that regard, she was like a female child under the age of ten years. In this case, then, resistance by her, or violent aggression by him, in any degree whatsoever, is not *necessarily* an element of the offence. And this, it cannot be · said, is asking for the creation of a new principle, but only its application, in this State, as it has been elsewhere, to a class of cases worthy of protection. *Stephen v. The State*, 11 *Geo.*, 225; 24 *U. S. D.* 510, §1, §3, §4; 1 *Bishop Cr. L.*, §28, §342–3, *and cases*

*cited ;* 2 *Bishop Cr. L.,* §939, *and cases cited ;* 1 *Whort. Cr. L.,* §1141 – 3; *The People v. McGee,* 1 *Denio R.,* 19; *State v. Farmer,* 4 *Ired.,* 224; · 4 *Blackst. Comm.,* 212; *Reg. v. Fletcher,* 8 *Cox. Cr. Cas.,* 131; 5 *Jur. N. S.,* 179; *Rex v. Regan,* 2 *Cox Cr. Cas.,* 115; *State v. Cron,* 10 *West. L. J.,* 501; *McNamaras Case, Oakley,* 521; 2 *Bennett & Heard's Mass. Digest,* 542, *note* 1; 3 *Greenleaf's Ev.,* §211 – 12; *Dean's Med. Juris,* 34 – 5.

COOLEY J.:

The defendant was informed against in the Circuit Court for the county of Kalamazoo for rape, alleged to have been committed upon one Mrs. Crittenden. The information was, in all respects, in the usual form.

On the trial, evidence was adduced that four persons, walking in the road together through or past a piece of woods, saw Mrs. Crittenden and the defendant in the road together a few rods off: Mrs. Crittenden, at the time, lying upon her back with her clothes up to her waist, and the defendant on his knees before her; that he did not have hold of her, or seem to be exercising any control, nor she to be making any resistance; that sexual intercouse took place between them, after which, on some slight noise being made, the defendant got up and ran off, while Mrs. Crittenden came out towards the witnesses smiling, and followed them to a house in the neighborhood where they were going to visit.

The prosecution then offered evidence to show that Mrs. Crittenden at the time was insane. The defendant objected to this as irrevelant, and also because, if insanity was a material fact, it should have been alleged in the information. The Court overruled the objection, and the defendant excepted.

The evidence given to establish insanity showed that Mrs. Crittenden was forty-eight or forty-nine years of age, in apparent good physical health, of good size and

seeming strength; that she had been in the insane asylum at Kalamazoo the preceding year, but was, at this time, residing at home with her husband; that she worked some at home, but appeared to be uneasy, and said she ought to be doing something, but did not know what to do. The most pointed testimony was that of E. H. Van Dazen, the physician, who was in charge of the insane asylum while Mrs. Crittenden was there, who testified that she was in a state of *dementia* — not idiotic, but approaching towards it; that she had vague apprehensions of injury, and a pre-disposition to be with men — a morbid, rather than an active desire, to have sexual intercourse; that that was one way in which her insanity manifested itself; that she was dismissed from the asylum not much improved, but under better control, and with more method in her conduct; that her general health was pretty good, and she was of good size, and apparently a strong woman. The witness did not think she had intelligent understanding at the time the crime was said to have been committed.

The Court below, at the conclusion of the case, charged the jury that if the woman was so suffering from mental disease at the time, as to have no intelligent will to oppose to the act of the prisoner, and he knew of this her condition, then her failure to oppose him, or her seeming acquiescence, could not be urged against a conviction; and that if he made the attempt upon her person with the intent to have carnal intercourse, and she did not resist because she had no intelligent will to oppose, he was guilty of the offence charged. Under these instructions the jury returned a verdict of guilty.

The exceptions present to us questions which we do not find distincly passed upon in any adjudged case. The main question, and the only one we deem it necessary to discuss, is, Whether the carnal knowledge of a woman *non compos mentis*, under the circumstances dis-

closed in the testimony above stated, can be punished as rape under the statutes of this State.

Rape is defined to be "the carnal knowledge of a woman by force and against her will." — 1 *East. P. C.*, 434; 4 *Bl. Com.*, 210. The statute providing for its punishment in this State — §5730 *of Compiled Laws* — is in the following words: "If any person shall ravish and carnally know any female* of the age of ten years or more, by force and against her will, or shall unlawfully and carnally know and abuse any female child under the age of ten years, he shall be punished," etc. This statute does, not change the nature of the offence as it stood at the common law, nor does it describe two distinct offences, but the carnal knowledge of the female child under the age of ten years is held to be rape, on the ground that,' from immaturity and want of understanding, the child must be deemed incapable of assenting, and the act presumed to be the result of force. — *People v. McDonald*, 9 *Mich.*, 150; *Commonwealth v. Sugland*, 4 *Gray*, 7. And it is insisted in this case that an insane woman, or one not mentally competent to exercise an intelligent will, is in the same position, as respects this crime, as a child under ten years of age, and that carnal knowledge of her person would constitute the offence notwithstanding her acquiescence.

If the case before us can be regarded as rape, it is apparent that it must fall within the first clause of the section quoted, since the other is confined, by its express terms, to carnal knowledge of female children under the age of ten years, and cannot be extended by analogy, to embrace other cases. But to warrant a conviction under the first clause of the section, the carnal knowledge must have been by force and against the will of the woman; and as there were facts before the jury, in this case, from which they might fairly infer that the woman, and not the man, was the soliciting party, and the charge of the

judge must be construed in the light of the testimony, the real question to be determined is, whether that is by force and against the will, where the woman assented to and desired its commission, but without possessing, at the time, the mental capacity which would render her responsible for her own conduct?

The general rule requires, not only that there should be force, but that the utmost reluctance and resistance, on the part of the woman, should appear. — *People v. Morrison*, 1 *Park. C. R.*, 625; *Woodin v. People, Ibid.*, 464. The essence of the crime is said to be, not the fact of intercourse, but the injury and outrage to the modesty and feelings of the woman, by means of the carnal knowledge effected by force. — *Pennsylvania v. Sullivan, Addis* 143; 2 *Bish. Cr. L.*, §944; 3 *Greenl. Ev.*, §210. As these circumstances are wanting in the present case, it becomes important to ascertain whether any other circumstances can be regarded as legal equivalents.

There are undoubtedly some cases where the law not only does not require actual force to be proved, but where force is presumed, and not suffered to be disproved. The case of carnal intercourse with a female child, under ten years of age, has already been alluded to, but the rule in that case is not an arbitrary one, but is based upon a well understood fact in nature, that the child, at that tender age, is without desire for such intercourse, and the presumption that it is against her will is therefore in accordance with the general fact. Nature, indeed, does not definitely fix the period at which the child might become capable of understanding the character of the act, and assenting to it: and the statute has therefore named the age of ten years as the period when the conclusive presumption of opposing will shall cease. The will, in this case, we apprehend, depends less upon mental capacity than upon physical considerations, and

the age named is not the age of consent, either at the common law or by the statute. It was, indeed, at one time supposed that if the female was over ten years of age, but under twelve, intercourse with her must necessarily be rape, because the capacity to consent was wanting; but the Courts did not so hold, and statutes were passed making the act a misdemeanor where the female was between the age of ten and the age of consent, but where, not being against her will, it did not fall within the definition of rape. — 1 *Hale P. C.*, 631; 4 *Bl. Com.* 212.; 1 *Russ. Cr.*, 693.

In the case of *Regina v. Campten*, 1 *Deer C. C.*, 89; *Same case*, 1 *C. & K.*, 746, it appeared that the prisoner gave the woman liquor for the purpose of exciting her, but which had the effect to make her quite drunk; and while she was in a state of insensibility, he took advantage of it and violated her. The Court held the act to be rape. The prosecutrix showed by her words and conduct, up to the latest moment at which she had sense or power to express her will, that it was against her will that intercourse should take place. It was no answer to the charge, therefore, that she had no opposing will at the moment when intercourse actually took place, since the prisoner had actually mastered it by means of the stupefying drug, which was the same, as was well remarked by one of the judges, as if it had been overcome by a blow.

*In Rex v. Charles*, 13 *Shaw's J. P.*, 746, cited in 1 *Bish. Cr. L.*, §343, *note*, and 2 *Arch. Cr. Pl. & Pr.*, 167 (306,) the prisoner had carnal knowledge of the person of a woman laboring under delirium, and who was insensible to the act. The act was held to be rape; but the decision can hardly be regarded as establishing an exception to the general doctrine as to this crime. If the woman was insensible, some degree of physical force must actually have been employed by the prisoner; and

no more resistance is required by the law, in any case, than the condition of the woman will permit her to make.

The facts, in the case last cited, made it open to the objection which appears to have been taken in *The State v. Owen*, 10 *West. Law J.*, 501; *Note to Whart. & St. Med. Juris.*, §463, where the defendant was charged with the crime of rape committed upon an insane woman. That case is sometimes referred to as holding that all carnal intercourse with an insane woman is rape; but the point involved was a very different one, and the decision sanctions no such doctrine. It is not a little remarkable that, while it is insisted by the prosecution in this case that *all* intercourse with a woman in this condition must be rape, because she has no capacity to consent, it was there urged by the defence, that *no* intercourse with her, even by force, could be rape, because she had no will to oppose. Rape, it is said, must be against the will; and how can an act be against the will of a person who has no will? This argument made it necessary for the Court to determine what is meant by the word *will*, as used by the law in this connection, and we quote from the decision so much as has a bearing upon this question: "Is it true," said the Court, "that an idiot or insane person has no will? What is the definition of these two words? Do they imply a loss of will or a mere unsoundness of mind? These words are thus defined by Webster: 'Idiot — a natural fool; a fool from birth; a human being in form, but destitute of reason, or the ordinary intellectual power of man. Insane — unsound in mind or intellect; mad; deranged in mind, and one of the words used to define *insanely*, is *foolishly*.' 'Fool' is defined to be 'one who is destitute of reason or the common power of understanding; an idiot.' " In Chitty's Med. Juris. an idiot is defined to be 'a person who has been *defective* in intellectual powers from

the instant of his birth, or at least before the mind had received the impression of any idea.' Again, Chitty says that 'idiocy consists in a defect or sterility of the intellectual power, while lunacy or madness consists in a perversion of the intellect.' All these definitions imply either a *weakness* or *perversion* of the mind or its powers, not their *destruction*. Hence, an idiot cannot be said to have *no will*, but *a will weakened or impaired:* a will acting, but not in conformity to those rules and motives and views which control the action of persons of sound mind. Indeed, in an insane person the will is too often fearfully active, and entirely uncontrollable by reason or persuasion. There is here no lack of will, but simply a perversion of it. Nor is this the most conclusive answer to the argument. If there is no will, how are voluntary actions continued? Actions, like respiration, are instinctive, and independent of the will; but eating, and numerous other acts which necessarily imply the exercise of the will, are performed by idiots and insane persons, and their exercise demonstrates the existence of a will — of a will that can assent to or dissent from what are clearly voluntary acts. I have, therefore, no hesitation in holding that both idiots and insane persons are possessed of a will, so that it may be legally and metaphysically said, that a carnal knowledge may be had of their persons *forcibly* and against their will."

From the brief note of the Scotch case of *McNamara*, *Ashley*, 521, 524, in 2 *Bish. Cr. L.*, §939, *note*, a similar defense would seem to have been made there. The woman, in that case, was an idiot; and the Court told the jury that if they believed the defendant "had actually penetrated the girl, *and that she had shown any physical resistance, to however small an extent*, the offence would be complete, *in consequence of her inability to give a mental consent.*"

Both these cases, while not perhaps distinct authori-

ties to that effect, clearly imply that the same circumstances must exist to constitute rape in the case of an idiot or insane woman, as where the woman is of sound mind. The word *will*, as employed in defining the crime of rape, is not construed as implying the faculty of mind by which an intelligent choice is made between objects, but rather as synonymous with *inclination* or *desire*; and in that sense it is used with propriety in reference to persons of unsound mind.

We are aware of no adjudged case that will justify us in construing the words " against her will," as equivalent in meaning, with " without her intelligent assent," nor do we think sound reason will sanction it. But, though the definition of the offence implies the existence of a will in the woman, which has opposed the carnal knowledge, no violence is done to the law by holding, in any case where the woman, from absence of mental action, does not willingly acquiesce, that the physical force necessary to effectuate the purpose, however slight, is against her will. As was said by *Alderson B.*, in *Camplin's case*, above cited, a woman may be supposed to have a general will not to be ravished ; and the man is not to be excused because she was prevented, or was unable, to exercise it in the particular case. If, therefore, a man, knowing a woman to be insane, should take advantage of that fact to have knowledge of her person, when her mental powers were so impaired that she was unconscious of the nature of the act, or was not a willing participator, we should have no difficulty in holding the act to be rape, notwithstanding distinct proof of opposition might be wanting. All such cases stand upon reasons which clearly distinguish them from the case now before us, where the will was active, though perverted, and all idea of force or want of willingness is distinctly disproved.

There are cases in which it has been held that if

the woman's consent is obtained by fraud, she at the time supposing the man to be her husband, the crime of rape is not committed. — *Rex v. Jackson, Russ. & R.,* 487; *Regina v. Saunders,* 8 *C. & P.,* 265; *Regina v. Williams, Ibid,* 286; *Regina v. Clarke,* 29 *E. L. & E.,* 542; *State v. Murphy,* 6 *Ala.,* 765; *Wyatt v. State,* 2 *Swan,* 394. But there are some cases in this country to the contrary, and they seem to us to stand upon much the better reasons, and to be more in accordance with the general rules of criminal law. — *People v. Metcalf,* 1 *Whart. C. C.,* 378, *and note* 381; *State v. Shepard,* 7 *Conn.,* 54. And in England, where a medical practitioner had knowledge of the person of a weak-minded patient, on pretence of medical treatment, the offence was held to be rape. — *Regina v. Stanton,* 1 *C. & K.,* 415; *same case,* 1 *Den. C. C.,*      . The outrage upon the woman, and the injury to society, is just as great in these cases as if actual force had been employed; and we have been unable to . satisfy ourselves that the act can be said to be any less against the will of the woman when her consent is obtained by fraud, than when it is extorted by threats or · force.

Undoubtedly, fraud would be much more readily inferred in a case of mental derangement than where the woman's powers of mind were unimpaired; but in the present case, no circumstance of either fraud or force was required by the charge of the Court to the completion of the offence, nor is it suggested that any such circumstance existed. The naked fact of intercourse, with knowledge of the mental condition, was held sufficient. As one who has knowledge of the facts which prove insanity must be supposed to know that insanity exists, it would follow that, in any case of doubt, a man's guilt or innocence would depend upon the preponderance of testimony on the question of the woman's competency. As marriage with an insane person

is void, it might become a serious question whether the ceremony could protect the too partial bridegroom from prosecution for rape, where he had relied upon manifestations which, to him, appeared the evidences of genius, but which experts should convince a jury were only the vagaries of a disordered imagination.

The conclusion at which we have arrived is, that rape, at the common law or under our statute, is not committed upon the person of a woman over ten years of age, where no circumstance of either force or fraud accompanies the carnal knowledge. The Circuit Court must be advised that, in the opinion of this Court, the conviction was erroneous, and that the verdict should be set aside and a new trial granted.

CAMPBELL and CHRISTIANCY JJ. concurred, and MARTIN Ch. J. concurred in the result.