THE STATE v. TARR.

| 28 | 397 |
|----|-----|
| 104 | 12 |
| 25 | 397 |
| 106 | 485 |
| 28 | 397 |
| 119 | 19 |

1. **Criminal law; RAPE.** In a prosecution for rape it is not necessary to establish the non-consent or force by proof of the outcries of the female, nor, by her or any one else, the fact of an actual struggle; nor is the State bound to show actual penetration by the prosecutrix herself; but the jury, taking all the facts and circumstances into consideration, may say from them whether the requisite facts are shown beyond such reasonable doubt as to warrant a conviction.

2. —— PRISONER'S KNOWLEDGE OF PROSECUTRIX'S IMBECILITY. So, too, if the prosecutrix was idiotic and unable to talk intelligibly, the jury might infer that the prisoner could and did know her condition upon meeting and talking with her awhile before making the assault.

3. **Instruction: ASSUMPTION OF FACT.** In a prosecution for rape, the court instructed the jury that if certain matters were established, "*the other ingredients being found,*" it would be their duty to convict. *Held*, that this was not an assumption, by the court, that such ingredients *had* been found, and that the jury could only reasonably understand therefrom that if the other ingredients were proven, it was their duty to convict.

4. **Rape: IMBECILITY OF PROSECUTRIX: WANT OF CONSENT.** In a prosecution for rape it may be properly held, without proof of resistance on the part of the female being shown, that the force used by the prisoner to effect his purpose was against her will, when it is shown that she was idiotic or of imbecile mind, and there is nothing to indicate that she desired or consented to the sexual connection.

5. —— When, in a prosecution of this character, the imbecility of the prosecutrix is shown, and the force on the part of the prisoner, then, if there is nothing to indicate *consent*, the act is, in legal contemplation, *against her will.* COLE, Ch. J., *dissenting.*

*Appeal from General Term, Sixth District (Washington County).*

THURSDAY, JANUARY 6.

DEFENDANT was indicted, tried and convicted of the crime of rape, in the District Court, and, this judgment being affirmed by the General Term, he now appeals to this court.

The sentence was imprisonment in the penitentiary for fifteen years.

*McJunkin & Henderson* for the appellant.

*H. O'Connor,* Attorney-General, for the State.

WRIGHT, J. — The errors relied on question the sufficiency of the evidence to warrant the verdict, and the

1. CRIMINAL LAW: rape.

action of the court in giving and refusing certain instructions.

The testimony shows that the prosecutrix was, at the time of the commission of the offense, about sixteen years of age, of good size and usual health, but weak intellect. Her father testified that she "was of very weak mind, and could not talk so as to be understood." She was occasionally sent on errands to nearest neighbors, but "was not capable of taking care of, nor of even dressing, herself." "Had fits when she was a little girl; was without her mind before she was able to talk; never had her mind like other people." The mother stated that she had "not been capable of taking care of herself; been idiotic ever since her birth." The testimony tends to show, that, on the morning of the 4th of September, 1869 (the time charged in the indictment), the prosecutrix was sent by her mother to see if there were hogs in the corn. The field is on the north side of the public high-

way, and the parties were found together by the mother in this field, under circumstances indicating, at least, the act of sexual intercourse, from one to ten rods from the road, and, say, one hundred yards from the house. The nearest neighbor lives south of the road, and within easy hearing distance. The mother and daughter were alone, and defendant, if not intoxicated at the time, was certainly so in the afternoon of the same day.

As the daughter failed to return as expected, the mother called her, receiving no answer; and after walking from the house still further, again called; heard a low voice, as if smothered; advanced still again and heard talking in the corn; and soon found the daughter and defendant; the defendant upon the person of the prosecutrix; told him to get away; the girl reached out her hand, and the mother raised her up; he raised up and fastened his pants; the mother threatened him and he threatened in return. The daughter was found to be greatly frightened; her clothes torn, with blood upon them. She seemed much injured and to "flinch when touched by the mother with her hand." She also seemed sore and lame, and this continued some days.

There was also evidence tending to show that the corn was knocked down near the spot, and there is no dispute that defendant was in a position to have carnal knowedge of the prosecutrix, either with or against her consent. In speaking of the transaction himself, he stated that he was passing the road, and seeing the girl, stopped to talk with her; that he heard that she was of easy virtue; talked with her a little bit; got over the fence and backed her up in the corn, or shoved her down; had intercourse with her; that the mother came up, took her away, and that he cursed and threatened her. This being the testimony in substance, the prisoner claims, *first*, that there was no sufficient evidence of force, or that the intercourse, if any,

was against the will of the female; *second*, no proof of penetration; *third*, no evidence tending to show that defendant *knew* her mental condition.

That the law as to what would constitute the crime of rape, as to what the State should prove, etc. (leaving out of view the female's mental condition), was correctly stated to the jury in the several very clear, and, we think quite explicit instructions, is scarcely denied. Thus, the offense was defined in the very language of the statute, and hence that defendant must have ravished and carnally known the prosecutrix by force and against her will (Rev. § 4204), but that proof of *actual penetration* was sufficient, etc. (§ 4101).

The jury were also told that, though satisfied of the carnal knowledge, yet if not satisfied, beyond a reasonable doubt, that it was by force and against her will, they should acquit; that not every act of sexual intercourse would constitute the crime charged, the gist of the offense being the injury to the female by compelling her to submit against her will; and that, though the prosecutrix was of weak mind, this should not be held against the prisoner unless the State has shown that he knew of her mental condition. These and other instructions, touching the points now under consideration, were given, presenting, as already suggested, very fully and in detail the law and the duty of the jury in such cases. Indeed, the defendant's instruction were all given as asked, and thus far, if there was any omission, it was no fault of the court; and this is especially so when those thus given are taken in connection with the instructions in chief. But there was no omission, and, thus far, no ground of complaint. Can we, then, interfere with the verdict as being unsustained by the evidence? We have examined and re-examined this record with the greatest care, have read and reread this testimony, and though strongly inclined at first to

defendant's construction of it, and especially so in view of the apparent severity of the prisoner's sentence, we are constrained to hold that we cannot, upon this ground, set aside this verdict. It was not necessary that the State should establish the non-consent, resistance or force, by proof of the outcries of the female, nor by her, or any other one, the fact of an actual struggle. Nor is the prosecution bound to show the fact of actual penetration by the prosecutrix herself. But the jury, taking into consideration the age of the female, her mental condition, the appearance of her clothes and person, the injuries received, her mute appeal for help as the mother appeared, what the prisoner himself said as to how the intercourse took place, his violent language and threats to the mother, the appearance of the ground and herbage in the field, and, in a word, all the circumstances, were to determine whether the requisite facts were shown beyond such reasonable doubt as to warrant a conviction; and thus looking at the case, we cannot say that the verdict was so clearly wrong as that it should be disturbed by us, and especially so after the judge, hearing all the testimony, seeing all the witnesses, the prisoner and the prosecutrix, has permitted it to stand.

The law as to the prisoner's knowledge of the prosecutrix's mental condition was, as we have seen, given as 2. —— prisoner's requested by his counsel. Was there any knowledge of evidence that he had this knowledge?— prosecutrix's imbecility. None, we admit, showing prior knowledge. But if she was idiotic, unable to talk intelligibly, then the jury might well infer that he could and did know her condition as soon as he met her, and especially so, as he himself stated that he talked with her awhile before making the assault. This is one of those facts that twelve men can know just as satisfactorily, and as conclusively, by or from certain undisputed circumstances,

as though the proof of actual knowledge was the most abundant and overwhelming. For, beyond question, any one not crazed by passion, or frenzied by stimulants, could well know the difference between an imbecile as described by the parents of this child, and one in the fair possession of her mental faculties. *Tomlinson's Case*, 11 Iowa, 401, is very different from this. There the female was of full age, strong mind, vigorous health, made no outcry, her clothes were neither torn nor injured, nor was there either remonstrance or resistance. The present is more like *Cross's Case*, 12 id. 66. For there the prosecutrix was of tender years, and though she made no immediate complaint, and though her garments were not torn, yet it was in substance held that the jury could well conclude that she spoke the truth; and that a less clear opposition might be demanded than if she were older and more intelligent; that under the circumstances, while the jury might have found submission, this did not necessarily imply *consent*, or that the act was not against her will. But without further pursuing this inquiry, we turn to the instructions which present a question, or perhaps questions, entirely new in this State; and, indeed, upon these we find but few adjupged cases. These instructions relate to the offense charged when committed upon one of weak mind, idiotic, incapable of giving consent, or, as some of the writers express it, incapable of exercising an intelligent will, and are in substance as follows:

1. If you find that the prosecutrix was not of sound mind, had been idiotic from her birth, and was actually incapable of assenting or dissenting, and further find that the defendant made an assault upon her, forced her back into the corn and threw her down, tore her clothes, abused her person, and actually had sexual intercourse with her, and nothing in her conduct even indicating an animal

desire to have the connection, you will be justified in finding that the act was against her will.

2. Mere submission will not necessarily involve consent, and though she may have submitted without resistance; yet, if from the circumstances, her condition of mind, and the defendant's admissions, you find she did not consent, the other ingredients being found, you should convict.

3. It is proper to consider, in determining whether there was force, the strength of her mind and its ability to resist; whether her mouth was covered; whether she held out her hands as if for help to her mother; whether he was of sufficient strength to overcome her in her condition of mind and body, etc.

4. Though you find her of weak mind, yet if she was capable of exercising her will sufficiently to control her personal actions, and if she acquiesced in the connection, the defendant would not be guilty.

5. He is not guilty if the carnal knowledge was with her consent and not against her will, though she was of weak mind.

6. Not every act of sexual intercourse with a woman of unsound mind will constitute rape. To be such, it must have been against her will or desire. If not satisfied that it was against her will, you should acquit. So too, if she voluntarily submitted.

The fifth and sixth were given at defendant's instance, the others in chief, and on the motion of the State.

The objections urged relate more particularly to a claimed *conflict* between the fifth and sixth instructions, and the language, "*if you find she did not consent, the other ingredients being found,*" in the second, as above numbered. Properly construed, and when taken in connection with the other instructions, the conflict claimed is not apparent. For while the law was given that not

every act of sexual intercourse with a female of unsound mind would constitute rape; yet, as consistently, it was further held, that if she was idiotic, incapable of assenting or dissenting, and there was nothing in her conduct indicating even an animal desire to have the connection, they would be justified in finding that it was against her will if they believed he made an assault upon her, forced her into the corner, threw her down, abused her person, tore her clothes, and actually had the intercourse. The plain and obvious meaning of all which is, that while *proof of the intercourse, without more,* with one of unsound mind will not establish force, this force may be found if there was an assault, violence or injuries. Than this, nothing, it seems to us, can be clearer or more obvious.

The whole law of the case, as bearing upon this point, is discussed by counsel, in commenting upon the language 3. INSTRUCTION: quoted above from the second instruction. assumption of fact. And herein we have the last question presented for our consideration. And, preliminarily, it is urged that from the words, " the other ingredients being proven," the jury could well infer that the court intended to say, that they *had been sufficiently shown or established.* The criticism is hardly consistent with a fair consideration of the language used and its construction. This method of instructing is not very unusual. The jury could only reasonably understand, that if the " *other ingredients*" were proven, etc. And especially so, as they were repeatedly and most explicitly told what were the other ingredients, and with what certainty they must be established to warrant a conviction. Thus far, or in this respect, therefore, there was no error.

But the important and vital point relied upon is, that the instruction says that " unless there was *actual consent* 4. RAPE: imbe- on her part, the act of defendant would be cility of prose- cutrix: want of rape, whereas there must be actual *dissent* consent.

and *repulsion* before there can be guilt, or, at least, such guilt as would make the prisoner liable as here charged.

To sustain the objection here presented, counsel rely largely upon *The People* v. *Cresswell*, 5 A. L. R. 339; 13 Mich. 427. We have examined the very able opinion of COOLEY, J., in that case, and fail to find any thing in it in conflict with this instruction. For there all claim that the act was by force and against her will was expressly negatived by the undisputed facts, and the real question was, " whether that is by force and against the will where the woman assented to and desired its commission, but without possessing at the time the mental capacity which would render her responsible for her own conduct ;" it being true that " the will was active, though perverted, and all idea of force or want of willingness distinctly disproved." The case before us falls rather within another class, where it is held, as we believe, without dissent, that if the man, knowing the woman to be insane (or idiotic), should take advantage of that fact to have knowledge of her person, while her mental powers were so impaired that she was unconscious of the nature of the act, or was not a willing participator, the act would be rape, though distinct proof of opposition might be wanting. And this would be the more incontrovertibly true if there was nothing in her conduct indicating even an *animal desire* for the connection. If this proposition be true, the case before us is of easy solution, for the first instruction in effect tells the jury that if there was *animal desire on her part*, they could not find guilt, though she had not sufficient mental capacity to give or withhold an " intelligent assent." Judge COOLEY, in the case cited, says, that though the very definition of the offense implies the existence of a will which has opposed the carnal knowledge, no violence is done by holding that the physical force necessary to effectuate the purpose,

however slight, is against her will when she, from absence of mental action, does not willingly acquiesce. And for this, as well as the instruction under consideration, there is express authority in *Fletcher's Case.* Bell C. C. 63 ; 2 Bish. Cr. L. § 1079, N. S. For there the direction to the jury, sustained by all the judges, was, " that, if they should be of the opinion that the girl was incapable of giving consent, or of exercising any judgment over the matter, then if they were satisfied that the prisoner had the carnal knowledge by force and *without her consent,* they ought to find him guilty." And see, also, *Ryan's Case,* 2 Cox C. C. 115 ; and a Scotch case (*McNamara's,* Arkley, 521) ; *State* v. *Cross,* note to Whart. and Stille Med. Jur., § 463. " Without her consent," as here used, according to the note by an author of very high legal ability to *Walter* v. *The People,* 6 A. L. R. 751, " meaning without her willingness or desire, whether that willingness be the result of mere animal passion or the exercise of an intelligent volition." And here, again, as we have already shown, the court below is in harmony with the authorities.

The language under consideration, when taken in connection with the facts, as claimed by the State, is really nothing different from the proposition that if the act was, in legal contemplation, *against her will,* the other ingredients being proven, defendant was guilty. For it must be remembered that there was evidence of force. At least, it is not a case of sexual intercourse without any fact tending to show violence. The mere submission did not necessarily mean consent. This was held in *Cross's Case, supra ;* and of its correctness there is no doubt. And, though she submitted without resistance, there still might be guilt, for she might, by reason of her mental condition and the circumstances surrounding, be incapable of offering opposition. The force necessary and the resis-

tance required must of course depend upon the relative mental and physical strength of the parties, and the circumstances surrounding them. Indeed, the authorities are abundant that there might be a conviction, where there is no apparent opposition at all. See them collected, note 2, § 1080, 2 Bish. Cr. Law. And now, when the State has shown the imbecility referred to in the instructions, and which it was for the jury to determine, and the force on the part of the prisoner, if there was nothing to indicate *consent* on her part, then we say it was, in legal contemplation, *against her will.* And this and no more, in our judgment, is what this instruction means. The jury could not reasonably have held it to mean any thing else. In it there was no prejudicial error.

Affirmed.

COLE, Ch. J. (dissenting). — I should have no difficulty in concurring in the foregoing opinion, and in the conclusion reached, were it not for the second instruction, which is as follows: "2d. Mere submission will not necessarily involve consent; and though she may have submitted, without resistance, yet, if from the circumstances, her condition of mind, and the defendant's admissions, you find she did not consent, the other ingredients being found, you should convict." Now our statute defining rape provides, that, "if any person ravish or carnally know any female of the age of ten years or more, by force and against her will," he shall be punished, etc. The statute, it will be observed, requires that it shall be "by force and *against her will.*" The instruction simply requires the jury to "find that she did *not consent.*" There is, it seems to me, a manifest difference between non-consent and against the will. There are very many things done without my consent, which are not, nevertheless, against my will. A female may passively submit to inter

course with a man, and it may truthfully be said that she did *not consent*, although it was not *against her will*. In other words, it seems to me the law requires that the jury must find that the act was against the will — a positive overriding of it, not simply a negative or non-resistant condition, expressed by the words, "that she did not consent."

I think that, in the case of an idiot or lunatic female, the jury may take into consideration her condition of mind, the circumstances of the connection, the indications of force and resistance, etc., to determine the fact that the act was against her will; but they must find that it was against her will, and not barely that she did not consent. The statute requires that the carnal knowledge to constitute rape must be by force and against her will, and it matters not what may be the condition of the body or mind of the female, nothing less than this will constitute rape; although much less and different evidence might satisfy the jury that the act was against the will of a female of weak mind, than if she was of a strong and vigorous mind. As this second instruction was a leading one, covering the whole case, and would justify or authorize the verdict of guilty as found by the jury, without a finding by them that the act was against the will of the prosecutrix, I think the defendant ought to have a new trial; but my associates think otherwise, and the order must, therefore, be made that the judgment appealed from shall stand affirmed.