STATE *v.* FRED W. JEWETT.

February Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed May 4, 1937.

*W. R. McFetters* and *P. C. Warner* for the respondent.

*W. K. Sullivan,* State's attorney, for the State.

SHERBURNE, J.   The respondent was tried and found guilty of the crime of rape upon Helen Harvey, and brings the case here upon exceptions.   Several exceptions were saved, but the only one necessary to consider is the overruling of respondent's motion for a directed verdict.

There was no evidence that the respondent used any force or violence to accomplish his purpose, but the State claimed that Helen Harvey did not have sufficient mental capacity to consent.

Helen Harvey was the State's principal witness.   We learn from her testimony that she began going to school when six years old, and left at sixteen when she was in the sixth grade. She then went to live in New York City with her aunt's family, where she remained five years and helped with the housework. While there she had improper relations with her uncle and thought she was in trouble.   After leaving New York she went to live with her mother in Newport, and there had an operation, as a result of which she understood she could not have children. When about thirty-two years old she went to work on the respondent's farm as housekeeper, and remained there about two years doing the housework and some chores at the barn.   Illicit relations began upon the second day she was there.   On that occasion the respondent came into her room after she had gone to bed and got into bed with her.   She knew what he wanted to do, that it wasn't right, and that people who did it ought to be married.   He told her on at least three occasions that if anything happened he would marry her.   At one time toward the last of her stay there on an occasion when the respondent was away, she had intercourse with the hired man at the respondent's suggestion, so that if she got into trouble she could lay it to the hired man.   She finally did get into trouble and at first laid it to the hired man.

A few months before the trial she was examined by an expert upon mental cases, who asked her some general questions about her family and early life, how far she got in school and what she had done since, and particularly about the conditions at the respondent's farm when she was working there.   He asked her "if she had ever been maltreated by men before, previous to that

present difficulty, and she said she never had; and also stated that in every instance with this particular man that he forced his attentions upon her, and she claimed that she knew that a woman might have a child as a result of that sort of act, but she believed this could never happen to her.'' He then gave her the standard mental tests which are now current, and determined that she had the mental age of seven years and three months. He testified that she had the mental capacity to understand and appreciate the nature of the sexual act ,to the same degree that a child of seven would have, and had not the mental capacity to give her consent to the performance of that act any more than an average seven-year-old child. She didn't tell him that the act was done under a promise of marriage, and it would not have made any difference in his conclusions if she had, although that might show that she knew what was generally conceded to be the right and wrong of it. He agreed that a person with the mental age of seven might have quite a good knowledge of moral things. There was evidence that the respondent knew that ''she was not all there mentally.''

Respondent moved for a directed verdict upon the ground that the State had failed to produce evidence from which the jury might find that Helen Harvey was of such mental stature that she was incapable of understanding the act which she did, its motives and possible consequences.

█ Rape is defined to be the ''carnal knowledge of a woman by force and against her will.'' 1 East P. C. 434; 4 Bl. Com. 210. P. L. 8388 provides that ''A person over the age of sixteen years who ravishes and carnally knows a female person of the age of sixteen years or more, by force and against her will,'' shall be punished in a certain manner. As to offenses against women of the age of sixteen and upwards this statute is declaratory of the common law. In the absence of a statute providing for the protection of mentally defective women we must decide this case according to common law principles.

██ There can be no question but that a copulation with a woman known to be mentally incapable of giving even an imperfect consent is rape. Bishop's Crim. Law, § 1123; *Reg.* v. *Ryan,* 2 Cox C. C. 115; *Reg.* v. *Fletcher,* Bell C. C. 63; *Reg.* v. *Barralt,* Law Rep. 2 C. C. 81, 12 Cox C. C. 498; *McQuirk* v. *State,* 84 Ala. 435, 4 So. 775, 5 A. S. R. 381; *State* v. *Tarr,* 28 Iowa, 397. But

a *non-compos* whose infirmity is less profound may consent. Bishop's Crim. Law, *supra; Reg.* v. *Pressy,* 10 Cox C. C. 635. The mere fact that a woman is weak-minded does not disable or debar her from consenting to the act. It has been said that a woman with a less degree of intelligence than is requisite to make a contract may consent to carnal connection, so that the act will not be rape in the man. *McQuirk* v. *State, supra.* We adopt the measure of capacity to consent used by the respondent in his motion for a verdict, and hold that there can be no conviction of rape under the circumstances of this case unless the woman was incapable of understanding the act, its motive and possible consequences. See *Crosswell* v. *People,* 13 Mich. 427, 87 A. D. 774; *Gore* v. *State,* 119 Ga. 418, 46 S. E. 671, 100 A. S. R. 182; *State* v. *Warren,* 232 Mo. 185, 134 S. W. 522, Ann. Cas. 1912B, 1043; *People* v. *Palvino,* 216 App. Div. 319, 214 N. Y. S. 577.

In view of the fairly intelligent answers given by the complainant as a witness for the State, and of the facts brought out in her testimony to which we have alluded, we do not think that the evidence that her mental age was only seven years and three months, and that she had not the mental capacity to give her consent to the act any more than an average seven-year-old child, was sufficient to take the case to the jury. Although she may have been a child mentally, she was not a child physically, and we cannot overlook the well-understood fact that the child of seven is without desire for such intercourse, whereas we cannot presume that fact in the case of a physically mature woman. *Crosswell* v. *People, supra.*

Respondent's motion should have been granted.

*Judgment reversed, conviction and sentence set aside, and respondent discharged.*