## Wilson v. Commonwealth.

March 27, 1942.

224

Phillip Schiff for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

Lee Wilson was convicted of forcibly raping Mayme Schneider, a female above 12 years of age, an offense de-

nounced by Section 1154, Kentucky Statutes. His punishment was fixed at confinement in the penitentiary for 10 years and on this appeal he contends the judgment should be reversed because: (1) The court erred in not directing a verdict in his behalf; (2) the court erred to his prejudice in the instructions given.

Mayme Schneider was an unmarried woman, 44 years of age. She made her home with a younger sister, Mildred, who worked and left the former alone during the day in their first-floor apartment at Elm and Patterson Streets in Newport. The prosecutrix was mentally afflicted—"man crazy" as one witness described her—and would hang out the window and call to men.

Appellant, a steel worker, residing near Germantown, Ohio, visited his sister, Mrs. Boling in Newport, who occupied a second floor apartment in the same building in which the Schneiders resided. He arrived at his sister's home Sunday night, and the next day while fixing a tire on his car in front of the building prosecutrix talked to him a little from her window. On Tuesday Wilson went to Latonia to visit another sister and when he returned to Mrs. Boling's home about 2 P. M. the following Friday he was drinking. The uncontradicted proof is that on that occasion the prosecutrix called appellant to her window, and after some little conversation, invited him in and assisted his entry through her window.

Wilson was seen climbing in the window, and prosecutrix' brother-in-law, Fred Wohlleber, entered the apartment and testified he found her and Wilson engaged in the act of sexual intercourse. Appellant denied he was doing more than standing by her bed. A stipulation admitted as the testimony of Dr. Alvin C. Poweleit, who examined prosecutrix soon after the alleged offense, was to the effect that although there was some evidence of an entry he could not positively say whether she had been entered. While her brother was in the apartment with prosecutrix, Mrs. Boling beat on the door and called to him to come out, but got no response. Wilson testified he did not hear his sister knock or call.

No expert testimony was given as to prosecutrix' mental condition, but her two sisters and her brother-in-law, Wohlleber, testified that from associating with her for many years and observing her, she could not carry

on an intelligent conversation; she never learned to read or write although she attended school for six years; that she had no mind and was an idiot.

Wilson testified he was not acquainted with prosecutrix, had never seen her but twice, once when she said a few words to him on Monday and again when she enticed him into her apartment on the following Friday; that she talked rationally and he did not know she was afflicted mentally. His sister, Mrs. Boling, testified the mind of prosecutrix was good until she got angry. She admitted telling appellant prosecutrix was "man crazy," but denied she had informed the sister, Mildred, that she had warned her brother not to go near prosecutrix.

Thus we see there is sufficient evidence in the record in warranting the trial court in submitting to the jury the question of whether appellant had sexual intercourse with prosecutrix or merely attempted it, and as to whether she had sufficient mind to consent to his actions, and as to whether he was acquainted with her mental condition at the time of the alleged offense. It follows that the court did not err in overruling appellant's motion for a directed verdict.

Our present statutes do not protect insane women and idiots from "consent" or "non-forcible" rape, therefore such offense is punishable under the common law which was adopted by Section 233 of our Constitution. The common law which exists in this State under Section 233 comprises all the laws which were in force in the State of Virginia on June 1, 1792, except in so far as they may have been modified by the Constitution, Legislature or judicial decisions, and which are not repugnant to the public policy of Kentucky, and has equal authority with statutory law. Com. v. Donoghue, 250 Ky. 343, 63 S. W. (2d) 3, 89 A. L. R. 819.

"Rape" at common law is defined to be the "carnal knowledge of a woman by force or against her will." 4 Bl. Com. 210; Payne v. Com., 110 S. W. 311, 33 Ky. Law Rep. 229. At common law the crime involved the element of force and originally it was no crime to have carnal knowledge of a female with her consent, regardless of her age. In the reign of Queen Elizabeth the age of consent was fixed by statute at 10 years of age and any violation of a girl under that age with her consent became "consent rape." Merriss v. Com., 287 Ky. 58, 151 S. W. (2d) 1030. With the age of consent established

under the common law, instances arose where consent was obtained by fraud and where the female was incapable of mentally consenting, and the perpetrator was deemed guilty of rape although no force was used because his victim was incapable of giving consent and the act was considered as having been accomplished by force. To express it another way, lack of ability to consent was regarded just as if force had been used, or such inability to consent took the place of the element of force in the crime. But merely because a woman is weak-minded does not prevent her from consenting to sexual intercourse. A woman without sufficient mind to enter into a contract may consent to copulation without rape being committed. State v. Jewett, 109 Vt. 73, 192 A. 7; Crosswell v. People, 13 Mich. 427, 87 Am. Dec. 774; McQuirk v. State, 84 Ala. 435, 4 So. 775, 5 Am. St. Rep. 381.

But sexual intercourse with an idiot or insane woman with her consent is not rape unless the man knows she is insane or an idiot and takes advantage of that fact to accomplish his purpose. Roberson's Criminal Law, 2d Ed., Section 582, p. 790; Sandefur v. Com., 143 Ky. 655, 137 S. W. 504. The burden is on the Commonwealth to prove beyond a reasonable doubt that the man knew, or had reasonable grounds to believe, that the female was in such mental condition as rendered her incapable of consenting. Beaven v. Com., 30 S. W. 968, 17 Ky. Law Rep. 246; State v. Warren, 232 Mo. 185, 134 S. W. 522, Ann. Cas. 1912B, 1043; State v. Helderle, Mo. Sup., 186 S. W. 696, L. R. A. 1916F, 735. This excerpt is taken from State v. Robinson, 345 Mo. 897, 136 S. W. (2d) 1008, 1009, which it quotes from State v. Warren, supra:

" 'Carnal intercourse with a woman incapable from mental infirmity of giving consent is rape, unless the man is ignorant of her infirmity and its extent, believes he has her consent, and has no intention to have intercourse without her consent.

" 'Where the woman in point of fact yields an apparent assent to the act, the burden is on the state to prove that at the time of the act she was incapable, because of mental disease, of assenting to or dissenting from the act, and that the defendant knew of such incapacity.'

"And further:

" 'It would not be enough to show merely that

she was weak-minded and that the defendant knew that she was so. "The mere fact that a woman is weak-minded does not disable her from consenting to the act. * * * So long as the woman is capable of consenting, and does consent, the act is not rape, and this is true though the man may know that she is of weak intellect."'

In the first instruction the jury were told in effect if they believed from the evidence beyond a reasonable doubt that appellant had carnal knowledge of Mayme Schneider "by force and against her will" they would find him guilty of rape. The second instruction submitted attempted rape "against her will or consent or by force." The third defined an attempt to commit rape. The fourth told the jury that the term "against her will or consent or by force" as used in the first two instructions need not be actual physical force, but that if the jury believed from the evidence beyond a reasonable doubt she did not have sufficient mentality to understand the shame of having illicit intercourse, or the will power to resist in any degree the endeavors of appellant or of any man, then she was incapable of giving her consent and the actions of appellant were against her will. The fifth instruction was in effect that if the jury believed appellant had carnal knowledge of Mayme Schneider and she was mentally incapable of consenting, the jury should find him guilty of rape, unless they believed he was at the time ignorant of her mental infirmities as described in the fourth instruction and he had no intention of having intercourse with her without her consent, in which event they would acquit him.

The verdict recited the jury found appellant guilty under the first instruction.

The Commonwealth had the burden of proving beyond a reasonable doubt that appellant knew before or at the time of the act the prosecutrix was mentally incapable of consenting thereto. There are three elements of the crime with which appellant is charged and the jury must believe beyond a reasonable doubt that all three existed before he can be convicted: (a) that he committed the act by force, or against the will or consent of prosecutrix; (b) that she was mentally incapable of consenting thereto; (c) that at the time of the act appellant knew she was mentally incapable of giving her consent.

The instructions failed to require the jury to believe

beyond a reasonable doubt that this third element existed before they could convict him, and this was prejudicial to his substantial rights. Too, the instructions as drawn were so confusing to the jury as to be prejudicial. There was no evidence of actual force and that question should not have been submitted to the jury, and we fear the modification or explanation of that term by the fourth instruction did not counteract the use of the words "by force and against her will" appearing in the first and second instructions.

On another trial the court will instruct the jury, in substance, that if they believe from the evidence beyond a reasonable doubt the accused had sexual intercourse with Mayme Schneider and if they further believe she was at the time of the alleged intercourse of such feeble and weak mind that she did not appreciate or understand the shame or wrong of having illicit intercourse, or the will power to resist the accused; and if they further believe from the evidence beyond a reasonable doubt that the accused before or at the time of the alleged act knew she was mentally incapable of giving her consent thereto, then the intercourse was against her will and without her consent and the accused is guilty of rape.

In a separate instruction the court should in substance say, that although the jury may believe from the evidence to the exclusion of a reasonable doubt the prosecutrix was in fact too weak-minded to understand the nature of the act complained of or to consent thereto, yet if she deported herself in such manner that a reasonable man under the circumstances proven would have thought she understood the nature of the act and was consenting thereto, and that accused did not then and there know, or have reasonable grounds for believing, her to be so weak-minded or idiotic as to be incapable of giving her consent, and he in good faith acted with her as a sane person, then the jury will acquit him.

Of course, an instruction will be given on attempted rape based on the mental inability of prosecutrix to consent and defendant's ignorance thereof. The attempt will be defined as was done in instruction 3 on the former trial, which followed the definition given in Payne v. Com., 110 S. W. 311, 33 Ky. Law Rep. 229. Also, the usual instruction on reasonable doubt will be given.

The judgment is reversed for proceedings consistent with this opinion.