[No. 1508.]

GRANVILLE BALDWIN *v.* THE STATE.

1. RAPE, as defined by the Penal Code of Texas, is " the carnal knowledge of a woman without her consent, obtained by force, threats or fraud, or the carnal knowledge of a female under the age of ten years, with or without consent, and with or without force, threats or fraud." Neither in this nor any other provision does the Code recognize mental incapacity of the female as a consideration affecting the offense of rape; and, therefore, whatever may have been the mental condition of the female, if she was over the age of ten years at the time of the alleged rape, it is incumbent on the State to allege and prove that the carnal knowledge was obtained without her consent and by means of force, threats or fraud. Consult the opinion in full on this subject, and note the suggested amendment of the Penal Code in this regard.

2. "FORCE."—Whatever may have been the common law rule, the Penal Code of this State does not, in its definition of rape, employ the word " force " with reference to the mere muscular force necessarily exerted by

the male in every act of copulation. Nevertheless, in estimating the efficiency of the resistance made by the female, the mental capacity of the female is a proper consideration.

3. RAPE—CHARGE OF THE COURT.—In the trial of appellant for the rape of a female aged seventeen, it was in proof that she was subject to epileptic fits, which rendered her unconscious during their continuance and impaired her mental faculties for some hours thereafter. On the hypothesis suggested by this proof, the trial court so instructed the jury as to exonerate the State from proof of the non-consent and resistance of the female to the carnal knowledge, thereby assimilating her legal *status* in this respect to that of a female under the age of ten years. *Held,* error. See the opinion of this court *in extenso.*

4. SAME—FACT CASE.—See this case for facts *held* insufficient to sustain a conviction for a rape, in view of the character of the evidence adduced to prove that penetration was effected and that carnal knowledge of the female was obtained by force and without her consent.

APPEAL from the District Court of Grimes. Tried below before the Hon. J. R. Kennard.

At the spring term, 1883, of the District Court of Grimes county, the grand jury presented an indictment whereby it was charged that Granville Baldwin, the present appellant, did, on February 1, 1883, "with unlawful force an assault make in and upon the person of Elizabeth Turner, and the said Granville Baldwin did then and there, by force and fraud, and without the consent of said Elizabeth Turner, rape, ravish, and have carnal knowledge of the said Elizabeth Turner, the said Granville Baldwin being a male, and the said Elizabeth Turner being a female; contrary," etc.

The cause was tried at a subsequent day of the same term, and the appellant was found guilty, and his punishment assessed at death. His motion for a new trial was overruled, and he appealed.

The opinion of this court sets forth the substance of the evidence adduced in behalf of the State to prove the *corpus delicti* at the trial of this instructive and important cause. Such other testimony as was introduced by the prosecution tended only to the proof of collateral circumstances not material to the questions discussed in the opinion. The appellant, it appears, left the neighborhood before he could be arrested, and was subsequently apprehended in the county of Harris.

The first witness for the defense was Henry Rogers. He testified that at the time of the alleged rape he was at the house of W. T. Turner, the father of Elizabeth Turner. The witness,

W. T. Turner and Zack Turner were sitting on the front gallery of the house, when Zack walked out into the yard, came back and touched W. T. Turner, and the two latter went out of the front gate and talked a while. Witness did not hear what they said. When they came back they and the witness went around into the back yard. About opposite the chimney they passed the defendant, but neither of them spoke to him. W. T. Turner repeatedly asked "Where is big Sis.?" (by which name Elizabeth appears to have been called in the family), and then went into the house and got a light, and came out and found her standing between the smoke house and yard. He asked her what she had been doing, and she said she had been attending to her own business. He asked her where she had been, and she told him she had been in the yard. Witness asked W. T. Turner what was the matter, and the latter replied that there was a d—d sight the matter, but never did tell witness what it was. Mrs. Turner told witness that Zack Turner said that Granville Baldwin had had Sis. down and done what he pleased to her. Witness, after washing up the dishes, started home, and on his way met the defendant, who was then going toward W. T. Turner's, and was about a hundred and fifty or two hundred yards from Turner's. Witness told defendant not to go to the house; that Mr. Turner was mad about something that had happened. Witness heard no cry of distress about the house at any time.

Ellen Baldwin, the appellant's wife, was the only other witness introduced by the defense. She testified that she accompanied her husband to W. T. Turner's on the day of the alleged rape. Mrs. Turner arranged the supper table and asked the defendant to come to supper. He replied that he did not want any, but informed her that Henry Rogers was there, and she told him to go and tell Henry to come to supper. Henry did not want any. About the time Mrs. Turner got done waiting on the table she missed her daughter (Elizabeth), and sent her other daughter to look for her. About that time the witness heard Mr. Turner call out to Elizabeth, apparently between the kitchen and the smoke house. He cursed, and asked her where she had been. She told him she had been in the yard. He then asked her "What?" and she told him she had been attending to her own business. W. T. Turner then went into the house to get his gun and pistol, and witness went in and asked him what was the matter. He took witness into the kitchen

and told her that Granville, the defendant, had had big Sis. down, and that Zack Turner saw him. Witness stayed in the kitchen a while and then went into Mrs. Turner's room, where all the children were. Elizabeth came out of her room and played with the other children at a game called the "fist game." She was as lively as any of the children. About ten o'clock the girls went to bed. Elizabeth never complained of being hurt, and made no outcry.

With the testimony of this witness the evidence was concluded.

*McDaniel & Buffington*, for the appellant.

*J. H. Burts*, Assistant Attorney General, and *W. W. Meacham*, for the State.

Hurt, Judge. Appellant was convicted of rape, the jury assessing the death penalty.

On the trial, evidence was adduced to the effect that Elizabeth Turner, the prosecutrix, was seventeen years of age. That, after the family of W. T. Turner had finished supper, Elizabeth being in the kitchen, the defendant motioned her to come out; that they then went around the house to a plank, which was but a few feet from the house. That, when Elizabeth went out, she thought defendant wanted to pay her some money which she had loaned him. When they reached the plank, defendant pushed her down, and she tried to push him off; to use the language of the prosecutrix at this point, defendant "had me on a plank. and he was on top of me, and bore down on me; said he would not hurt me. He hurt me with either his hand or something in his hand: did not hurt me much; don't know what he tried to do. I showed the place he hurt to my mother that night; don't know what hurt; don't know what he hurt me with. I was down and defendant was on top of me, when Zack Turner came around and defendant ran off. I said nothing to Zack Turner, nor he to me. The parties, my mother, Ellen and the children, could hear to where I was, if noticing. I did not halloo, but was going to when Zack came around. You can hear persons calling from the kitchen to the house. Father came to me first and asked what I had been doing; I told him I had been attending to my own business. I don't know

what Granville tried to do, and did not consent for him to lay me down."

The above is in substance the evidence of Elizabeth Turner, regarding facts and circumstances relating to the supposed rape.

W. T. Turner, the father of Elizabeth, Zack Turner and Henry Rogers were on the front gallery of the house. Zack Turner walked out into the yard and came back, touched W. T. Turner, and they went out to the front gate. At this point Zack Turner told W. T. Turner that defendant "had big Sis. down." W. T. Turner went at and around by the chimney, between the smoke house and the dwelling house, and found his daughter standing between the smoke house and kitchen, rather stupefied. She told him that defendant threw her down. Turner then went for his gun and pistol, which were usually kept in the house; he never saw defendant any more until on the examining trial, some six weeks afterwards. Defendant is about thirty years old. He was arrested at the city of Houston.

Mrs. Theresa Turner, mother of Elizabeth, stated, in substance, that it is about twenty-four feet from the kitchen to the dwelling, and eight feet from the smoke house to the dwelling. That after the family ate supper, she called defendant to supper, but he said that he did not want any. He was then requested to come in and wait on his children, but came not. At this time Elizabeth was standing at the corner of the table next to the smoke house. When Mrs. Turner "got through waiting on the table, Elizabeth was gone." When this was discovered, Mrs. Turner "told her little daughter to go and look for her." About five or six minutes later she heard Mr. Turner say he would kill the d—d rascal. Mrs. Turner went to them, when Elizabeth went into the kitchen, and Mr. Turner went into the house to get his gun and pistol. Mrs. Turner took her daughter into her room and examined her. She discovered that her person had been penetrated. The parts looked bruised and inside of the edge looked rough. There was some blood on the inside edge of the privates, and old blood on her clothing. No blood was flowing from the privates, and there was no fresh blood on her clothing. The outside of her private parts was swollen, and the inside of the edge looked raw. No one else was present at this examination. A physician was not called, because not deemed necessary.

The above facts constitute, substantially, the case relied upon by the State to prove sexual intercourse between defendant and

Elizabeth.   It will be borne in mind that Zack Turner was not introduced, nor is any explanation given why so important a witness was not placed upon the stand as a witness for the State.

The rape is charged to have been effected by *force* and *fraud*. This conviction can be sustained only upon the ground that the rape was effected by *force* as the means, for two reasons: first, because the evidence fails completely to show that character of fraud required by the Code by which a rape may be effected (Art. 531, Penal Code); second, if there was evidence tending to show that the rape was accomplished by such fraud as is specifically named in the last article cited, still a conviction could not be sustained, based upon fraud as the means, because there is no part of the charge which alludes to, much less defines, the character of fraud required by the Code, by means of which a rape may be effected.

Hence, if this conviction is sustained, it must rest upon *force* alone as the means employed to effect the rape.   This being the case, and conceding that there was a penetration, do the facts of the case, looking to all the surrounding circumstances, sustain the conclusion of guilt of *rape by force?*   Under well settled rules of the law of evidence relating to the conduct of the prosecutrix, when situated as was this girl, we hesitate not in saying that the evidence in this case, conceding ordinary mental capacity to the girl, will not sustain the conviction of defendant of rape by *force*.

But it is urged with great force that, as the girl was incapable of giving consent, because of defective mental capacity to such an extent that she did not know that "carnal knowledge outside of lawful marriage was morally wrong," therefore no force was required, and that consent could not be given by such a person.   And, in line with this view of the case, the learned judge presiding upon this subject instructed the jury as follows:

"A female person over ten years of age, or over that age, is presumed to be capable of giving consent to carnal knowledge; but such presumption may be rebutted or removed by proof, where such female is shown to be so deficient in mental capacity as not to know that carnal knowledge outside of lawful marriage is morally wrong; for, in case of such want of knowledge at the time the act charged (if ever) was committed, then such person is presumed to be incapable of giving consent."   *   *   *

As a basis for this theory of the State, and for the charge thereon, the prosecution offered evidence to show that Eliza-

beth Turner, at the time, was insane. The evidence given to establish insanity showed that Elizabeth was seventeen years old. There was no evidence showing the size, strength or physical health of the young lady. Her mother, upon this subject, testified in substance to these facts:

"My daughter has been subject to fits all of her life, and *has hard fits now.* Her mind is sometimes very deficient—at times, after fits, for some minutes. She had one or two spells that day. Had a fit on the day of the examining trial. The defendant had been in the employ of Mr. Turner for more than ten years. He has seen my daughter have many a spell, and has helped to take her up. Between fits, my daughter, when she is up and going around, acts all right. Sometimes she brings water—two buckets at a time—from the well to the house—well is about fifty yards from the house—and sometimes falls while bringing water."

Elizabeth Turner, the prosecutrix, on this subject, states that "at the time the offense was committed. I did not have a fit on me, and knew everything that was going on." The father and other witnesses corroborate Mrs. Turner in regard to Elizabeth being subject to fits, and their effect; and Mr. Turner states that when he found her behind the house, when the act was performed, she seemed to be stupefied.

Two physicians were sworn as experts. They state that from the symptoms described by the witnesses, it is their opinion that the young lady was suffering from epilepsy, and they gave it as their opinion that epilepsy impairs the mind, more or less, according to the frequency and severity of the attacks, and according to the general physical condition of the subject, whether feeble or robust. They did not know to what extent Elizabeth Turner suffered, nor of her condition at the time of the offense. Where epilepsy is prolonged its tendency is to impair the mind. An epileptic is slow of comprehension; slow to answer. It affects the body. One who has been subject to the disease for fifteen years might suffer for several hours from the effects of a fit. Dr. John Buchanan, one of the experts, stated that "persons suffering from epilepsy could have a fit and not know it at the time, or afterwards. Such fits are very short, not more than one or two minutes. Said fits are very rare."

The above being the evidence on the subject of the insanity of Elizabeth Turner, two phases are presented of defective in-

tellect: First, complete insanity; and second, imbecility of mind not amounting to insanity.

If the carnal knowledge was had at the time when the young lady was laboring under an epileptic fit, or so soon thereafter as that the patient had not recovered from the effects thereof, and while she was completely insane. the question, in such a case, would then arise as to whether force must be used by defendant, or whether resistance must be made by the girl? We are of the opinion that, at common law, when the woman is completely insane—insane to such an extent that she cannot assent or dissent to the act—and the man does not suppose he has her consent, the force required, and which is involved in the carnal act, would be ·sufficient. (2 Bish. Crim. Law, sec. 1121; *State* v. *Zorn*, 28 Iowa, 397; *Key* v. *Barratt*, Law Rep., 2 C. C., 81.)

But, suppose that she be insane—*non compos mentis*—without knowledge of the right or wrong as to the act, but nevertheless assents, prompted by natural desire, in such a case we are of the opinion that under our Code there could be no rape. For, by Article 528, the carnal knowledge must be by *force and without the consent* of the female. But it may be objected that, if the party be insane, and not mentally competent to exercise an intelligent will (assent). she would be in the same condition as a child under ten years of age, and that carnal knowledge of her person would constitute rape, notwithstanding her acquiescence.

If the case before us can be regarded as rape. it is evident that it must be so by virtue of the provisions of Article 528, which relate to the carnal knowledge of the female over the age of ten years, and not that clause which relates to children under the age of ten. Now then, the question: If it required an act of the Legislature to constitute carnal knowledge of a child under ten years of age, with or without force, threats or fraud, and with or without consent, rape, how can it be claimed that knowledge of a female over ten—though occupying the same mental position as a child—with or without fear, threats or fraud, and with or without the consent, can be rape? In regard to a female over ten. the elements of rape generally. under our Code, would make it necessary for the prosecution to allege and prove that the carnal knowledge was effected without consent, and by means of force, threats or fraud; hence the necessity of the clause in protection of the little ones under the age of ten.

However, this precise question was before the Supreme Court of Michigan, in the case of *Crosswell* v. *The People*. The statute

of that State providing for its punishment is in these words: "If any person shall ravish and carnally know any female of the age of ten years, or more, by force and against her will, or shall unlawfully and carnally know and abuse any female child und r the age of ten years, he shall be punished." etc. After a very able opinion, Judge Cooley concludes as follows: "The conclusion at which we have arrived is, that rape, at the common law, or under our statute, is not committed upon the person of a woman over ten years of age, when no circumstance of either force or fraud accompanies the carnal knowledge."

We have been considering this case upon the supposition that the woman was entirely destitute of mental capacity sufficient to assent or dissent, and upon the theory that she was *non compos mentis*, but did yield her consent. Should the case be considered upon either of these theories? Will the solemn facts of this record permit us to so consider it?

It is a well settled principle that the law presumes all persons to be sane; hence it devolved upon the State to show the prosecutrix insane, or to prove that the carnal knowledge was obtained by force and without her consent. This insanity must be shown to have existed at the very time of the act. It is true, this may be done by circumstances; still, it must be done. Does the evidence in this case show that Elizabeth Turner was insane at the time of the act? That she was subject to epileptic fits, and that while they were pending, and for some minutes after, her mind was affected to the extent of rendering it incapable of assenting or dissenting, may be true; but what evidence is there that at the time of the act she had a fit, or had just had one and was laboring under the immediate effects of the same? She had on that day been thus affected. What time of the day; in the morning, at noon, or in the evening? Upon this point the evidence is silent. If in the morning, at noon, or one hour before the act, according to a sworn fact of her mother—a fact of the highest importance and of the most vital consequence— her mind was sane and active. For her mother swears that "between the fits, *when she is up and going around, she acts all right.*" Just before the act she was up, going around, and attending to the household duties. Again, much light might have been obtained from Zack Turner on this point, but strange, indeed, is the fact that he was not used as a witness by the State. He, as disclosed by the record, saw the parties in the very act. Were there any symptoms or evidences of epileptic fits then?

What was the conduct of the girl at the time—her movements, etc.? Was her conduct natural—her actions such as those of a sane person, or was there any circumstance tending to show insanity from any cause? Just at this point, while the parties were in the very act, how important, if possible, to ascertain the condition of the mind of the unfortunate girl; and just upon this point —at this particular point of time—how terribly suspicious the absence of Zack Turner. He, above all other persons, was the most material witness for the State. This witness could have placed several questions beyond doubt, which are obscure, and which are of the first importance in this case.

While it may be true that a person laboring under epileptic fits may not be aware of it at the time, it does not follow that a person subject to such fits may not know when he is not under their influence. A subject to such fits certainly knows when they are eating their food, or conversing with their friends; and, if not und r the influence of such fits, unless demented, would certainly know, as this young lady swears she knew, that "at the time the offense was committed she did not have a fit on her, and she knew everything that was going on." If, then, this girl was worthy of belief. she certainly was in one of her lucid intervals, which, according to the evidence, was her usual condition, and knew everything that was going on.

But it may be urged that, if insane, her evidence upon this point should not be considered and allowed any weight whatever! This is a fearfully dangerous position for the State. For if not worthy of credence because of insanity, upon what principle of law and justice can the State, by means of the criminative facts sworn to by her, demand the life of defendant? Will the State be permitted to use as a witness a person to convict defendant, and, when necessary to secure the conviction, plead the insanity of her witness? Can a person be a sane witness for the State, and, when necessary to the success of the prosecution, be the *insane victim*, when insanity is a vital issue in the case? In a case in which the patient has lucid intervals this may be done, and the witness may testify intelligently to the facts occurring at these intervals. But in this case, this witness was required, and spoke to facts which occurred at the very time when insanity is sought to be used and made available to the State—at the time of the act charged by the State to be rape.

Here again the absence of Zack Turner is intensely felt. For by the young lady the State had proved that defendant

threw her down, and was on top of her, hurt her privates, etc. How could she swear to these facts if insane from fits or the effect of fits? Zack Turner told her father that defendant had his daughter down; he went to the parties, or near them, saw them and reported what he had seen to the father of the girl. Why was he not introduced by the State and these facts proved directly by him, and not by the imbecile girl, or the hearsay evidence of the father. We are not questioning the admissibility of what Zack told Mr. Turner; it, being a part of the *res gestœ*, was admissible, but it was nevertheless the statement of Zack Turner made without the sanction of an oath, and is certainly not as satisfactory as if sworn to by him.

We are of the opinion that the evidence failed to show the insanity of the prosecutrix at the time of the act of carnal knowledge in such a clear and satisfactory manner as will relieve this case of the necessity of proof of force and want of consent.

We are not to be understood as holding that the same amount of force is required to overcome resistance in all cases in which the woman is rational. A woman with a weak mind, though rational—*compos mentis*—certainly would not be expected to make that resistance which one with a keen sense of the offered outrage, and possessed of a clear intellect, would interpose. In judging of the force or threat, the mental condition of the woman may and should be looked to.

We have been treating this case upon the hypothesis that there may be rape without force, or without opposition on the part of the woman, threats and fraud aside.

We are of the opinion that in a case in which the female is over ten years of age, rape cannot be committed unless against the consent of the woman, and force, threats or fraud be the means used to effect the act of carnal knowledge. For, if there be no force, threats or fraud used, under our statute, be the common law what it may, most evidently there can be no rape. Nor will the force which is of necessity involved in the carnal act be sufficient. If so, there is no propriety in the Code requiring force to be used as one of the means by which the carnal knowledge is to be effected. Force, threats or fraud must be the means, and if either of these means be resorted to, still, if the act is with the woman's consent, there is no rape. To hold otherwise would be to eliminate from the statute the most vital and essential elements of rape, where the female is over ten years of age.

These being our views upon this subject, we would most respectfully suggest to the Legislature the passage of an act to this effect: "That if any male person, fourteen years old or upwards, shall have carnal knowledge of any other woman than his wife, such woman being so mentally diseased at the time as to have no will to oppose to the act of carnal knowledge, he knowing her to be so mentally diseased, he shall be guilty of rape."

We will now return to the charge of the court, above cited. It is evident that, if we are right in the views here stated relating to our statute upon rape, the charge is not correct. The effect of the charge is to relieve the State of proof of the want of consent. It relegates an insane person to the position of a child under the age of ten years. It substitutes imbecility of mind for resistance—opposition.

We are also of the opinion that the proof of penetration is not of that character as will sanction this conviction. To our minds it is vague and uncertain. The symptoms given in the evidence of the mother may, and may not, have been caused by penetration. We will not discuss this matter further than to say that, upon this point, the evidence of Zack Turner would shed very great light—the position of the parties, their movements, etc., would be of the utmost importance on this point.

1. We are of the opinion that the evidence in this case is of too doubtful a character to sustain the conviction.

2. The charge of the court in reference to the mental condition of the woman is erroneous.

3. Penetration is not satisfactorily shown.

4. The record discloses that there is better and more satisfactory evidence bearing upon these facts, viz.: first, the defendant had carnal knowledge of the woman; second, the mental condition of the girl; and third, penetration. (*Porter alias Taylor* v. *The State*, 1 Texas Ct. App., 394; 1 Greenlf. on Evid., sec. 82; 1 Black. Com., book 3, side page 371; Burrill on Cir. Evid., 730.)

Because of the errors above noticed the judgment is reversed and the cause remanded.

*Reversed and remanded.*