**David S. SALSMAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 31, 1978.

Rehearing Denied May 19, 1978.

Blake Page, Page & Clay, Winchester, for appellant.

Robert F. Stephens, Atty. Gen., James L. Dickinson, Asst. Atty. Gen., Frankfort, for appellee.

Before MARTIN, C. J., and WHITE and PARK, JJ.

PARK, Judge.

The appellant, David S. Salsman, was indicted for rape in the first degree (KRS 510.040). Following a jury trial, Salsman was convicted of sexual abuse in the first degree (KRS 510.110). He appeals from the judgment of the Clark Circuit Court imposing a sentence of five years imprisonment.

On this appeal, Salsman raises two issues: (1) that he was entitled to a directed verdict of acquittal because of the Commonwealth's failure to prove "forcible compulsion," and (2) that the trial court erred in submitting an instruction to the jury on sexual abuse in the first degree.

I

The testimony at trial was not conflicting. The conflict concerned the inferences to be drawn from the evidence. Salsman admits sexual intercourse with the prosecutrix. However, he testified that the prosecutrix did not resist. On this appeal, he contends that there is a complete absence of any evidence of forcible compulsion.

The prosecutrix was twenty-four years old at the time of the incident. According to a clinical psychologist who examined her, the prosecutrix had a verbal I.Q. of 57. With regard to verbal skills and reasoning skills, the prosecutrix was functioning at the level of a ten year old. The prosecutrix performed better in exercising performance skills which did not require the use of language. Respecting performance skills she was functioning on the level of a twelve to thirteen year old child. Her overall I.Q. average was in the 60's. This placed her in the retarded range. In the opinion of the psychologist, the prosecutrix was capable of understanding that a sexual act was being performed upon her. However, he also testified that he observed that the prosecutrix was easily threatened and frightened and that her judgment in dealing with new experiences may be impaired. The record also establishes that the prosecutrix suffered from deafness and that she had to read lips if other persons were to communicate with her.

The prosecutrix was alone in the home of her natural mother and stepfather at the time of the incident. Shortly after noon, Salsman arrived at the home to deliver bread and milk. He was a route salesman for a dairy, and he had seen the prosecutrix at the home on other occasions when she was visiting her mother.

After placing the milk and bread in the refrigerator, Salsman asked the prosecutrix to have sexual relations with him. She refused. Salsman then opened his pants

and sought to have the prosecutrix perform an act of fellatio. Again, she refused and resisted by covering her mouth. The prosecutrix had been seated in a rocking chair when she resisted his first advances. Salsman testified that he "grabbed her by the hand and pulled her up" out of the chair. He then removed her slacks, panties, and menstrual belt and pad. She continued to protest, saying, "No, no." He then sought to have intercourse with the prosecutrix, both from the front and rear. Salsman testified that he used no physical force upon the prosecutrix, and that she did not resist other than saying, "No, no." The prosecutrix testified that she wanted to run away, but that she did not attempt to run away or to resist because she feared Salsman would hurt her.

When the prosecutrix's stepfather returned to the residence around one o'clock, he found her "very nervous and upset." Later, the prosecutrix was interviewed at the hospital by a detective with the Kentucky State Police. According to the detective, the prosecutrix was crying and very upset.

At common law, rape constituted sexual intercourse of a woman by force against her will. If the woman lacked the mental capacity to consent, force was deemed to have been used. The inability to consent took the place of the element of force in the crime of rape at common law. A woman was considered to be mentally incapable of consenting to intercourse if she could not appreciate or understand the wrong of having illicit intercourse *or* she did not have the will power to resist the accused. *Wilson v. Commonwealth*, 290 Ky. 223, 160 S.W.2d 649, 651–52 (1942); *Jones v. Commonwealth*, 154 Ky. 752, 159 S.W. 568 (1913). Even if the woman could understand the nature of the sexual act, she was deemed mentally incapable of granting consent if she lacked the mental capacity to resist.

■ Under the present penal code, a woman's mental capacity to resist remains a relevant issue. However, mental incapacity to consent is no longer the equivalent of force. Lack of consent is a separate element of every offense defined by Chapter 510 of the Kentucky Revised Statutes. Lack of consent can result from forcible compulsion or incapacity. KRS 510.020. Whether this element of the offense is supplied by forcible compulsion rather than incapacity to consent can affect the degree of the offense. Compare KRS 510.040 (rape in the first degree) with KRS 510.060 (rape in the second degree). Forcible compulsion places the victim in fear of death or physical injury. With mental incapacity to consent, fear may be completely absent.

■ A man is guilty of rape in the third degree if he engages in sexual intercourse with a woman who is incapable of consent because she is mentally defective. KRS 510.060. A man is guilty of sexual abuse in the second degree if he subjects a woman to sexual contact who is incapable of consent because she is mentally defective. KRS 510.120. A woman is "mentally defective" if she suffers from a mental disease or defect which renders her incapable of appraising the nature of her conduct. KRS 510.010(4). Under this definition, it is immaterial whether the person does not possess the power to resist because of a mental disease or defect. In determining whether a woman is incapable of granting consent because she is mentally defective, the sole question is whether she is capable of appraising the nature of the sexual act being performed. In this case, the record established that the prosecutrix did understand that Salsman was seeking to perform sexual acts upon her. The trial court correctly concluded that Salsman could not be guilty of either rape in the third degree or sexual abuse in the second degree on the theory that the prosecutrix was incapable of giving consent.

■ Before Salsman could be found guilty of either rape in the first degree or sexual abuse in the first degree, it was necessary for the Commonwealth to establish that he had exercised forcible compulsion upon the prosecutrix. KRS 510.010(2) defines that term as follows:

"Forcible compulsion" means physical force that overcomes earnest resistance or a threat, express or implied, that overcomes earnest resistance by placing a person in fear of immediate death or physical injury to himself or another person or in fear that he or another person will be immediately kidnapped.

This definition is the same as that contained in section 1100 of the final draft of the Kentucky Penal Code, published in November 1971. Consequently, the commentary accompanying that section of the 1971 final draft may be used as an aid in construing the present penal code. *Cooper v. Commonwealth*, Ky., 550 S.W.2d 478 (1977); KRS 500.100.

■ In discussing the definition of forcible compulsion, the commentary states:

The term also includes a threat, express or implied, that overcomes earnest resistance by placing a person in fear of immediate death or physical injury to himself . . . . The threat must be communicated, and it must be the cause of the submission. The definition does not require that the victim's fear be "reasonable." One who takes advantage of a victim's unreasonable fears of violence should not escape punishment any more than the swindler who cheats gullible people by false statements which they should have found incredible . . .

. . . The phrase "earnest resistance" requires more than token initial resistance but less than showing that the victim was physically incapable of additional struggle against his assailant.

In determining whether the prosecutrix submitted to Salsman because of an implied threat which placed her in fear of immediate death or physical injury, a subjective rather than objective standard must be applied.

During the trial, the prosecutrix testified:

D48 While he was doing this, were you trying to get free?

A Yes.

D49 Were you afraid of him?

A Yes.

D50 Why were you afraid of him?

A I don't know.

D51 Are you afraid of people you don't know very well?

A Very much. Strangers, I am scared of them, but I don't know why.

. . . . .

X31 Did you do anything else? Did you holler or shout out?

A No. I was afraid to open my mouth. I don't know. I was just scared. I am always scared.

. . . . .

. . . I was trying to get away from him the best I could. I was scared. I thought I could run away.

X34 Did you try to run away?

A I felt like it. But I was afraid if I did, he might hurt me.

. . . . .

X37 Do you know what the word gentle means? He wasn't holding you by the hair, or anything? He wasn't rough with you?

A He was holding me—I don't know—I don't know why.

X38 Were you trying to move about and get away from him?

A I was trying to—however you say it—away. I was afraid to fight him. I was he might hurt me. (sic)

X39 He wasn't being rough with you, though?

A No, sir.

According to the State Police detective, Salsman admitted to him that the prosecutrix told him, "No, no," several times. Salsman himself admitted that the prosecutrix told him "no" more than once when he sought to perform the sexual acts with her.

■ In determining whether the prosecutrix submitted to forcible compulsion, the jury was entitled to consider a number of factors. The prosecutrix was mentally retarded. Because of her deafness, she had difficulty understanding communications from other persons. She was alone in the house. Salsman ignored her physical resistance to his efforts to perform an oral sex

act upon her. He ignored her repeated indications that she did not wish to have sex with him. He physically pulled her from a chair. Salsman physically held the prosecutrix while he removed her clothing.

We conclude that the trial court correctly submitted the question of forcible compulsion to the jury. Taking into consideration all of the circumstances, the jury could believe beyond a reasonable doubt that the prosecutrix was terror-stricken at the time she submitted to Salsman.

## II

Salsman asserts that the trial court erred in submitting an instruction on sexual abuse in the first degree. The prosecutrix indicated that Salsman had sexual intercourse with her. Salsman himself admitted to having sexual intercourse. The physician who examined the prosecutrix at the hospital testified that there were signs of recent sexual intercourse. Consequently, Salsman asserts that there was no issue respecting sexual intercourse and that he was guilty either of rape or of no offense at all. When all of the evidence indicates that there was sexual intercourse and there is no evidence that there was only sexual contact, a defendant is not entitled to an instruction on the lesser offense of sexual abuse in the first degree. *Isaacs v. Commonwealth*, Ky., 553 S.W.2d 843 (1977); 1 Palmore and Lawson, *Instructions to Juries in Kentucky* § 2.32 Comment (1975). Asserting that there was no evidence of sexual contact alone, Salsman argues that it was prejudicial error to instruct on sexual abuse. *Cf. Elmore v. Commonwealth*, Ky., 520 S.W.2d 328, 331 (1975).

Even if the giving of an instruction on sexual abuse might constitute reversible error in a case in which there was no evidence that the defendant's act constituted only sexual contact, the giving of the instruction on sexual abuse was not reversible error in this case. First, we note that no objection was made at the trial level to the giving of the instruction, as required by RCr 9.54(2). Once the trial court had overruled the motion for a directed verdict of acquittal, as a matter of sound trial strategy, Salsman may have been delighted that the trial court gave the jury the option of finding him guilty of sexual abuse in the first degree which was only a Class D felony. Otherwise, the jury would have had only the option of finding Salsman guilty of rape in the first degree, a Class B felony, or returning a verdict of not guilty. Not having raised the question before the trial court, Salsman should not be allowed to complain of the instruction for the first time on appeal. *Stinnett v. Commonwealth*, Ky., 553 S.W.2d 55 (1977).

The crime of sexual abuse is clearly a lesser included offense of the crime of rape. Sexual intercourse is an element of rape. Sexual contact is an element of sexual abuse. Sexual intercourse always involves sexual contact as that term is defined in the statute. On the other hand, sexual contact does not always involve intercourse. In this case, Salsman made three attempts before he succeeded in having sexual intercourse with the prosecutrix. The evidence would support a finding that there was sexual contact when he attempted to force the prosecutrix to perform fellatio upon him and when he first attempted sexual intercourse with her. We conclude that the substantial rights of Salsman were not prejudiced when the trial court gave an instruction on sexual abuse in the first degree.

## III

The judgment of the circuit court is affirmed.

All concur.