**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0255n.06

Case Nos. 11-6139 & 11-6174

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| JOHN PRICE, | ) | |
| | ) | |
| Petitioner-Appellee/Cross-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| STEVE HANEY, Warden, | ) | KENTUCKY |
| | ) | |
| Respondent-Appellant/Cross-Appellee. | ) | |
| | ) | |
| | ) | |

**FILED**
Apr 03, 2014
DEBORAH S. HUNT, Clerk

BEFORE: DAUGHTREY, COOK and WHITE, Circuit Judges.

COOK, Circuit Judge. John Price, a former Kentucky pastor, began a sexual relationship with an underage female member of his congregation in 1983. The first two times he touched her, he surprised her by grabbing one of her breasts. The advances escalated to intercourse. A jury convicted him of nine first-degree sexual offenses, including two for rape. He currently serves a 49-year prison sentence.

After exhausting state remedies, Price requested habeas relief in federal court claiming unreasonableness in (1) the Kentucky Supreme Court's decision on direct appeal that sufficient evidence of "forcible compulsion" supported the counts and (2) the state appellate court's decision on collateral review that rejected his claim of constitutionally deficient counsel. The

district court granted relief only on the sufficiency claim regarding the two breast-grabbing counts. Price and the warden appeal, and we affirm.

On the sufficiency claim, the record reasonably shows that, for the six most serious counts, the victim submitted to Price's advances because she feared he would harm her physically—and that is all Kentucky's forcible-compulsion statute requires. But, as the district court decided, the spontaneous groping incidents cannot reasonably support the sexual-abuse counts because the statute requires an implied threat that overcomes earnest resistance. Finally, on the ineffective-assistance claim, Price identifies no constitutionally deficient action on the part of sentencing counsel.

I.

At trial the parties agreed on basic facts. Price groped the breasts of the victim, who we will call F.P., when he was 29 years old and she was only 14. At that time she had been staying overnight routinely in Price's guest room after helping his wife with the family's chores. The sexual encounters intensified over the next eight years to intercourse during the time that F.P. worked as Price's full-time administrative assistant.

The parties vigorously disputed, however, whether Price's sexual activity with F.P. involved "forcible compulsion," an element of first-degree sexual offenses in Kentucky. *See* Ky. Rev. Stat. §§ 510.110(1)(a) (sexual abuse), 510.040(1)(a) (rape). Price, testifying in his own defense, described the contact as loving and claimed that F.P. consented to it. F.P., calling the contact painful, testified that Price angrily forced it on her. During each of the first two breast-

grabbing incidents, according to F.P., Price groped her by surprise, but during each remaining incident he touched her after she had a chance to resist and at times after she did verbally resist or pull back. F.P. testified that she feared retribution from God should she resist Price's advances, though regarding at least one occasion she also said that she was "afraid he would hurt" her. (R. 67-1, Trial Tr. at 37.)

The jury found Price guilty on all counts. At the penalty phase of trial, Price's counsel informed the jury that it could recommend to the court a total sentence of 10 to 70 years' imprisonment. (*See* R. 70-1, Penalty Phase Tr. at 2.) The jury recommended 69 years, and the judge accepted that recommendation at sentencing.

On direct appeal, the Kentucky Supreme Court upheld the verdict against an insufficient-evidence challenge. *Price v. Commonwealth (Price I)*, No. 2001-SC-1023-MR, 2003 WL 21993641, at *11 (Ky. Aug. 21, 2003). In a written opinion, the court analyzed the counts collectively and concluded that a jury could believe that F.P. submitted to Price's advances only because she feared immediate physical harm, mainly from God's retribution. *See id.* at *9, *11.

Price then sought collateral relief in the state courts, claiming ineffective assistance of counsel on account of a bevy of perceived constitutional shortcomings at sentencing. After an evidentiary hearing, the trial court denied relief on that ground, but set aside a sodomy conviction on other grounds, reducing Price's sentence to 49 years. The Kentucky Court of Appeals affirmed, finding no constitutional deficiency in counsel's representation.

*Commonwealth v. Price (Price II)*, Nos. 2005-CA-000435-MR, 2005-CA-000511-MR, 2006-CA-000454-MR, 2007 WL 4553688, at *5−6 (Ky. Ct. App. Dec. 28, 2007).

Price claimed in his federal habeas petition under 28 U.S.C. § 2254 that the state courts unreasonably applied Supreme Court precedent in rejecting his sufficiency and ineffective-assistance claims. A magistrate judge recommended invalidating the first two sexual-abuse convictions for insufficient evidence because Price used surprise, not force or a threat, to grab F.P.'s breast. But the remaining counts warranted no relief, according to the magistrate, because F.P.'s testimony showed Price using force or a threat of such abuse to ensure F.P.'s submission. The magistrate also endorsed denying the ineffective-assistance claim. The district court adopted the recommendation in full and granted the writ as to the two sexual-abuse counts if the trial court fails to expunge them within 90 days of any appellate decision that affirms the judgment. This appeal followed.

## II.

Neither the warden nor Price views the district court's sufficiency ruling favorably; the warden attacks the grant of relief on the two sexual-abuse convictions, and Price challenges the denial on the other six. Price faces a high burden to convince a federal habeas court to disturb a state court's sufficiency finding. A habeas petition succeeds if the state court's adjudication on the merits of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court established the standard for

4

sufficiency claims in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* requires affirmance if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis removed). Together, § 2254(d)(1) and *Jackson* create two layers of judicial deference for such claims on federal habeas review: first, we must defer to the jury's rational conclusions drawn from the evidence; and second, we must defer to the state court's decision rejecting a sufficiency claim. *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam); *Moreland v. Bradshaw*, 699 F.3d 908, 916−17 (6th Cir. 2012). Only unreasonable applications of *Jackson* warrant relief. *Coleman*, 132 S. Ct. at 2062.[1]

The Kentucky Supreme Court concluded that a jury could believe that Price overcame F.P.'s earnest resistance by implicitly threatening her with physical harm. Forcible compulsion in 1983 meant "physical force that overcomes earnest resistance[,] *or* a threat, express *or implied*, that overcomes earnest resistance by placing a person in fear of immediate death or physical injury." Ky. Rev. Stat. § 510.010(2) (1983) (emphasis added). On the force-or-threat point, the court determined that the jury heard evidence that "F.P. was fearful of an implied threat of force." *Price I*, 2003 WL 21993641, at *9. Evidence of such a threat, according to the court, included (1) F.P.'s subjective fear of God's physical retribution, (2) Price's physically and verbally abusive interaction with F.P., (3) the paternal authority Price exercised over F.P. as

_____

[1]Price also asserts generally that the state's decision "was based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), but he argues his claim as only one under (d)(1) and *Jackson*.

pastor and employer, and (4) F.P.'s familiarity with Price's temper. *See id*. at *9−11. On the overcoming-earnest-resistance point, the court noted that F.P. "testified that she did struggle to break free of [Price's] grasp by collapsing away from him or breaking his grasp," *id*. at *10, and that "earnest resistance" would require less, given "F.P.'s naiveté and fear of Price," *id*. at *11.

Reviewing the Kentucky Supreme Court's decision for reasonableness, we agree with the district court that it reasonably applied *Jackson* to all but the first two sexual-abuse convictions.

### A.  First Two Sexual-Abuse Counts

Our analysis of the first two counts of sexual abuse begins and ends with F.P.'s testimony that Price touched her breast *before* she could react. During the first incident, Price surprised F.P. by grabbing her breast immediately after she answered his knock on the guestroom door. *See Price I*, 2003 WL 21993641, at *2. He did not touch her again. *See id*. During the second incident, similarly, Price grabbed F.P.'s breast as she slept—and again he pulled his hand back before F.P. realized what happened. *See id*. at *2–3. A surprising breast grab, according to the warden, "effectively and preemptively" overcomes earnest resistance and thus constitutes sufficient evidence of forcible compulsion.

But a fleeting grope evinces no showing of compulsion because the element of surprise obviates the need to overcome a victim's resistance. *See State v. Ritola*, 817 P.2d 1390, 1392 (Wash. Ct. App. 1991) (reversing conviction under forcible-compulsion statute because when defendant grabbed victim's breast he "caught the [victim] so much by surprise that she had no time to resist"). Forcible compulsion entails more than lack of consent. *See Miller v.*

6

*Commonwealth*, 77 S.W.3d 566, 575 (Ky. 2002) (reversing forcible-compulsion conviction because "the only evidence of forcible compulsion was that [victim] did not give [defendant] permission to have sexual relations with her"). A contrary interpretation ignores Kentucky's distinction between third-degree sexual abuse (premised on non-consent, *see* Ky. Rev. Stat. § 510.130) and the first-degree sexual abuse charged here (premised on non-consent *and* forcible compulsion, *see* Ky. Rev. Stat. § 510.010(2) (1983)). The Kentucky Supreme Court unreasonably failed to apply this legal distinction.

The warden points to state cases holding that evidence of "the victim's resistance is not required if resistance would be useless or dangerous," *e.g.*, *Walker v. Commonwealth*, No. 2006-SC-000480-MR, 2007 WL 2404508, at *4 (Ky. Aug. 23, 2007), but those cases say nothing about the state's burden to prove that the victim at least submitted to a threat. Indeed, in those cases, the defendant overcame the victim's resistance by threatening her into submission—in *Walker*, the defendant threatened to kill her with a butcher knife. 2007 WL 2404508, at *4. *See also Yarnell v. Commonwealth*, 833 S.W.2d 834, 836 (Ky. 1992) (requiring evidence that the unresisting victim nevertheless "submitted because of an implied threat which placed her in fear"). We cannot reasonably say that Price threatened F.P. into submission in these two incidents.

The warden also suggests that the Kentucky Supreme Court's opinion establishes a new surprise-attack rule meriting deference. But the court created no such rule, instead inexplicably combining its analysis of these counts with the later abuse that (as we will explain) included

7

submission to implied threats. This constitutes an unreasonable application of *Jackson*'s rule that courts must ensure that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. The district court therefore correctly granted habeas relief on these counts.

## B. Remaining Counts

As the district court recognized, analysis of the remaining counts differs because F.P. submitted to Price's advances under circumstances that encompassed an opportunity to resist. Because sufficient evidence reasonably demonstrates that F.P. submitted under implied threats of immediate physical harm, the Kentucky Supreme Court reasonably upheld Price's convictions.

Kentucky cases delineate no rigid standard for determining when a defendant employs an "implied" "threat" that "overcomes earnest resistance by placing a person in fear of immediate death or physical injury." Ky. Rev. Stat. § 510.010(2) (1983). We draw guidance from two key Kentucky cases.

First, in *Yarnell v. Commonwealth*, the defendant "was always yelling and screaming and every other word was an obscenity" and hit one of his two stepchildren on "several occasions." 833 S.W.2d 834, 836 (Ky. 1992). The court upheld 16 convictions for sexual offenses against the children, whom the jury reasonably concluded "went along" with the sexual abuse because they "lived in continued fear of what Yarnell might do to them or their mother." *Id*. at 837. Second, in *Salsman v. Commonwealth*, the defendant "ignored [the victim's] physical resistance" in "covering her mouth," "ignored her repeated" cries of "no, no," "physically pulled her from a

chair," and "physically held [her] while he removed her clothing." 565 S.W.2d 638, 640−42 (Ky. Ct. App. 1978). The court sustained a rape conviction because "the jury could believe beyond a reasonable doubt that the [victim] was terror-stricken at the time she submitted to Salsman." *Id*. at 642.

F.P. testified to similar circumstances reasonably showing that she submitted to Price's advances because she lived in continued fear that Price would physically harm her. Price, according to F.P.'s testimony, "was bigger than life to [her]; not just his stature, but who he was." *Price I*, 2003 WL 21993641, at *2. Moreover, the jury heard F.P. testify that Price manhandled her during each incident supporting the remaining convictions:

- *Third sexual-abuse count*: Price "grabbed [F.P.'s] arm" and "pushed [her] down to [her] knees" before reaching between her legs. *Price I*, 2003 WL 21993641, at *3. She "didn't . . . say something" in part because she "was scared." *Id.*

- *Fourth sexual-abuse count*: F.P. awoke to Price digitally penetrating her, and "[i]t hurt, it was . . . frightening, it was shameful." (R. 67-1, Trial Tr. at 36.) When she "questioned or would draw back" he would say "trust me, trust me, trust me." (*Id.*)

- *Fifth sexual-abuse count*: Price showed F.P. a movie depicting a rape and later that night digitally penetrated her "and was very angry, very aggressive, very in and out of [her] with his fingers very roughly." *Price I*, 2003 WL 21993641, at *4. The abuse prompted F.P. to recall the "presence of evil" depicted in the movie. *Id.*

9

- *Attempted-rape count*: Price "pulled [F.P.] out of bed," exposed his aroused penis, and told F.P, "You are going to like this, I am only going to stick it in a little bit." *Id*. at *6 (internal quotation marks omitted). He partially inserted his penis at some point before or after F.P. cried "[n]o, no, no," but he pulled back after she "burst out crying and went just like psycho scared . . ." (R. 67-1, Trial Tr. at 60.) [2]

- *First rape count*: Price "instruct[ed]" F.P. to undo her clothes, and she told him "[n]ot like this," but Price "was insistent [she] would like it" and "very forceful[ly]" penetrated her "maybe three times until he finished for himself and then he promptly got up and went to the bathroom." *Price I*, 2003 WL 21993641, at *6−7.

- *Second rape count*: Price proceeded to intercourse after cutting F.P.'s pantyhose with scissors, telling her that she "'better be careful,' implying that if [she] wasn't careful [she] would get cut." *Id*. at *8.

The state court reasonably concluded that the jury could believe that Price "exercised a good deal of paternalistic authority" over F.P. and "subjected [her] to constant abuse by verbally berating her." *Price I*, 2003 WL 21993641, at *11. The record includes evidence that he handpicked her to lead the youth group and pulled her out of the usual Sunday class to join his own. *See id*. at *1, 11. Price even managed to have F.P. graduate two years early so that she could work as his full-time administrative assistant. *See id.* at *11. Throughout this period of her youth, he taught her that serving him "was equivalent to serving God." *Id*. at *1. And, as the

---

[2]Price additionally contends that no evidence shows him taking a "substantial step" toward rape, *see* Ky. Rev. Stat. § 506.010(1)(b), because after F.P. pulled back he stopped on his own. Regardless of whether he stopped, he undisputedly inserted his penis—clearly a substantial step toward rape given his violent conduct. *See Long v. Commonwealth*, 559 S.W.2d 482, 485 (Ky. 1977) (finding attempted rape in "forcing [the victim] into the bathroom at gunpoint, cornering her, kissing her, and ordering her to remove her clothes").

state court noted, he demonstrated a fiery temper, once smashing F.P.'s windshield after discovering that another man invited her to Florida for a visit. *Id*. at *11. In another incident, he choked a parishioner. *Id*.

Price counters the import of this forcible-compulsion evidence, arguing that, because F.P. testified that she feared *God's* physical punishment, no evidence shows that she feared *Price*— and according to him, a fear of God alone cannot sustain convictions for forcible compulsion. The record reasonably reflects, however, that F.P. also feared physical abuse at Price's hands. He painfully touched her multiple times. When asked by the prosecutor at trial whether she was "afraid he would hurt" her during one incident, she responded "Yes, I didn't know what he would do. If he would do this, I didn't know what the man would do." (R. 67-1, Trial Tr. at 37.) Her response shows that, though not knowing precisely how Price could harm her, she nevertheless feared physical abuse. This fact distinguishes *Miller v. Commonwealth*, 77 S.W.3d 566, 575–76 (Ky. 2002), in which the Kentucky Supreme Court reversed forcible-compulsion convictions because the victim "did not testify that [the defendant] used physical force against her . . . or that she submitted to [the] advances out of fear of harm to herself or another."

Price sees no evidence that a threat "overcame F.P.'s earnest resistance" because he reasons that physical resistance to a sexual act is required to uphold his guilt. Not so. Overcoming earnest resistance can mean that the victim "submitted because of an implied threat" by the defendant. *Yarnell*, 833 S.W.2d at 836; *Salsman*, 565 S.W.2d at 641. F.P.'s testimony— including that Price "was bigger than life to [her]," *Price I*, 2003 WL 21993641, at *2— reasonably shows that she submitted under the implied threats detailed above and by each court that reviewed this case.

The Kentucky Supreme Court's decision to uphold the jury's verdict on these counts reasonably applied *Jackson* because evidence shows that Price "overc[ame] [F.P's] earnest resistance by placing . . . [her] in fear of immediate . . . physical injury." Ky. Rev. Stat. § 510.010(2) (1983). The district court thus appropriately denied habeas relief.

III.

Price also appeals the district court's dismissal of his ineffective-assistance-of-counsel claim, and faces another doubly deferential standard. Such a claim succeeds only if (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 687−88 (1984), and (2) the state court unreasonably applied this already "highly deferential" standard, *see* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). Neither the Kentucky Court of Appeals nor the district court specifically addressed the arguments Price raises in this appeal. *See Price II*, 2007 WL 4553688, at \*5−6. We nevertheless discern reasonable bases in the state court's decision.

Price first questions several statements in counsel's closing argument to the jury during the penalty phase of trial, which we distill to a contention that counsel unreasonably failed to advance various leniency arguments. For example, according to Price, counsel should have requested leniency by citing "the fact that [F.P.] could have ended it all by clearly saying 'no'" and counsel ought to have pressed "Price's genuine feeling for F.P. during the period of their extended affair." (Petitioner's Br. at 52.)

Courts strongly presume the reasonableness of an attorney's decision to forgo certain arguments, *see Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam); *Bell v. Cone*, 535 U.S. 685, 701−02 (2002), and we decline to disturb that presumption here given that the value of these arguments lay in the jury seeing Price as truthful, which the guilty verdict contradicted. Counsel

testified at a post-conviction hearing in the state court that his strategy at sentencing was to take the focus off "the character of John Price." (R. 70-3, Evid. Hr'g Tr. at 21.) This decision strikes us as reasonable in light of the jury's guilty verdict.

We disagree with Price that counsel's presentation to the jury "sound[ed] like a prosecutor's speech." (Petitioner's Br. at 49.) True, counsel told the jury that it could recommend that the judge "stack the[] offenses by recommending the consecutive" sentences. (R. 70-1, Penalty Phase Tr. at 2.) Yet this utterance fell within the aspect of counsel's informing the jury of the possible sentencing ranges. He likewise informed the jury that it could recommend the minimum sentence of 10 years by imposing concurrent sentences. (*Id.*) And in fact he suggested that the jury recommend that sentence, saying "naturally you would expect me to ask you for the minimum that you could give him." (*Id.*)

Price offers a few additional, undeveloped reasons for granting relief. Though counsel never expressly asked the court for leniency at sentencing, he otherwise advocated on Price's behalf at the sentencing hearing and the Constitution does not prescribe that counsel make implicitly obvious statements. Price also contends that counsel unreasonably neglected to inform him of his right to address the judge at sentencing, but he fails to explain how pre-sentencing preparation would have strengthened his allocution. Finally, we need not determine whether the state court applied the incorrect standard of prejudice because Price cannot demonstrate the prerequisite—objectively ineffective counsel.

IV.

For these reasons, we AFFIRM the judgment of the district court.