# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 17, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0066-MR

BILLY DRACE, JR.                                               APPELLANT

                       ON APPEAL FROM OHIO CIRCUIT COURT
V.                    HONORABLE TIMOTHY R. COLEMAN, JUDGE
                                NO. 18-CR-00111

COMMONWEALTH OF KENTUCKY                            APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Billy Drace, Jr. (hereafter "Drace") appeals as a matter of right[1] after being convicted of four counts of rape in the first degree; two counts of sodomy in the first degree; six counts of incest; and six counts of sexual abuse in the first degree. The singular issue on appeal involves the trial court's refusal to grant a directed verdict in Drace's favor. Finding that the trial court properly denied Drace's motion for a directed verdict, we affirm.

## I. Factual and Procedural Background

Between the ages of thirteen and fifteen, R.C., Drace's stepdaughter, was living in Drace's home, sharing a room with her new stepsister, A.D. In November of 1994, R.C. recalls that while in bed for the night she heard Drace

---

[1] Ky. Const. § 110(2)(b)

open their bedroom door and skulk towards her. Fearing her sister asleep and afraid of the consequences of resisting, R.C. testified that she laid still as Drace removed her clothing, sexually abused her by grabbing her breasts and genitals, before eventually raping her.[2] Drace's sexual predation continued through R.C.'s fifteenth birthday, resulting in four instances of rape, two instances of sexual abuse, and two instances of sodomy.

Several years later, after divorcing R.C.'s mother, Drace began attending church in his community. There he became a fixture, befriending the family of J.S. (who attended the same church) over the course of several years. Drace, being alone at the time, was invited to family dinners, would spend Thanksgiving and Christmases with the family, becoming something of an uncle to the children in that family and J.S. specifically.

In 2002, Drace suffered serious injuries from a motorcycle accident. As a result, he required basic assistance around his home, as he was largely confined to his sofa. J.S.'s family, namely her mother, herself, and her older sister volunteered their time to help with his recovery. As a part of their graciousness they would spend the night with him from time to time. Sometimes all three were there, other times it would just be a single person. The sleeping arrangement was such that everyone ended up in the living room. One such night, while her sisters were sleeping, J.S. heard Drace sliding down

---

[2] Although unaware at the time, R.C.'s stepsister A.D. was awake and similarly terrified. Her testimony corroborated this event and several more. A.D. is the biological child of Drace and reports no sexual abuse at the hands of her father, but instead testified that she would hear him come into the room on several occasions to abuse and rape R.C.

from his perch on the recliner sofa and crawling ever closer to her. Once he was next to her, Drace touched her breasts before eventually digitally penetrating J.S. Confused, scared, and convinced that because Drace had so completely ingratiated himself into her family that she would not be believed, J.S. stayed silent, deathly afraid of the consequences of resisting or coming forward.

Much like the abuse suffered by R.C., that night was only the first in a string of sexual predations which occurred while J.S. was between fourteen and sixteen years old. On a subsequent occasion while J.S. was again assisting Drace through his recovery, he grabbed her breasts and digitally penetrated her. The last reported instance of abuse occurred when J.S. was home spending time with one of Drace's daughters, playing with her, braiding her hair and completing a cat puzzle. J.S. was sixteen at the time. While there, Drace instructed J.S. to follow him to the bedroom where he opened a shoebox filled with pornographic photos from a recent motorcycle convention he had attended. After asking a series of lewd questions to J.S. regarding the photos, Drace began to masturbate. Eventually he commanded her to "finish it" which she did, petrified of Drace, fervently believing that she would not succeed in convincing the adults in her life of what had transpired.

Fortunately for both girls, now women, the abuse stopped as they aged. While R.C. remembers a night after moving back into the home from a semester at college where Drace again snuck into her room, intent on resuming his abuse, R.C. was able to finally fend him off. These events remained a dark memory for both women until 2018 when Drace was being investigated on

3

similar charges regarding two other victims. In March 2018, Drace's current spouse Sharon contacted Detective Pate and told her that she needed to speak with R.C. and Drace's biological daughter A.D. After hearing about the investigation, J.S. independently came forward and spoke to Detective Pate, informing the detective of her own experiences. J.S. and R.C. had no relationship prior to testifying at trial, in fact meeting for the first time just a few weeks before they were set to testify.

The grand jury indicted Drace on a total of ninety-one counts of sexual abuse, sodomy, incest, and rape. A number of counts were severed and Drace ultimately went to trial with respect to victims R.C. and J.S. on sixty counts. During trial, Drace moved for, but was denied, a directed verdict following the Commonwealth's case in chief and again at the end of all presentation of evidence. Ultimately, Drace was convicted on twenty counts and sentenced to seventy years imprisonment. On appeal, Drace's sole argument is that the denial of a directed verdict at trial is reversible error.

## II. Analysis

Drace's argument, such as may be divined from his sparse one-page brief, rests on the assertion that the trial court erred as to each count for which Drace would ultimately be convicted. In support of such a sweeping claim, Drace simply states that the Commonwealth failed to prove his guilt beyond a reasonable doubt. Drace presents no legal or factual basis in support of his claim that the Commonwealth failed to meet its burden.

Our standard for reviewing directed verdict decisions is well settled; trial courts are charged with drawing "all fair and reasonable inferences from the

evidence in favor of the Commonwealth." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). Then, "[i]f the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given." *Id.* Finally, "[o]n appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.*

From the outset, we note that Drace has failed to satisfy even the most basic requirements in presenting this Court with his appeal. The entirety of his argument stretches little more than a single page, with the vast majority of ink reserved for inapposite or otherwise unexamined case citations. Drace believes that he has preserved this issue for appeal under CR[3] 50.01 because, in moving for a directed verdict below, he claimed that the Commonwealth failed to carry its burden as to all twenty counts for which he was being tried. Yet, he failed to draw the trial court's attention to the supposed deficiencies in the prosecution's case, and certainly elucidates nothing for us now. Thus, we find that Drace has not preserved his appeal for our review.

CR 50.01 states unequivocally that a "motion for a directed verdict shall state the specific grounds therefor." *Pate v. Commonwealth*, 134 S.W.3d 593, 597 (Ky. 2004). In *Pate* we held that defense counsel's assertion "I make a motion for a directed verdict" was not sufficiently specific to preserve the argument on appeal. *Id. Pate* is instructive because similarly, Drace's general

---

[3] Kentucky Rules of Civil Procedure.

objection to the sufficiency of the evidence provides this Court no opportunity to meaningfully address his concerns.

Even if we disregarded the blatant insufficiencies of his brief and reviewed the matter for palpable error pursuant to RCr[4] 10.26, Drace would still not succeed. Palpable error review allows reversal only when a "manifest injustice has resulted from the error." *Elery v. Commonwealth*, 368 S.W.3d 78, 98 (Ky. 2012). Manifest injustice occurs when "the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable[.]'" *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015) (citations omitted). Having reviewed the evidence extensively we find that the Commonwealth presented sufficient evidence to the jury that it could have reasonably found Drace guilty of each charge, and thus no manifest injustice resulted.

More specifically, with regards to the accusations of rape, KRS[5] 510.040(1)(a) states that a person is guilty of rape in the first degree when "[h]e engages in sexual intercourse with another person by forcible compulsion[.]" Forcible compulsion does not require physical force; either an express or implied threat of force will be enough to sustain the indictment. KRS 510.010(8). The test to determine whether an implied threat of force was applied so as to satisfy the forcible compulsion element focuses on the subjective belief of the victim, without regard for the reasonableness of that

---

[4] Kentucky Rules of Criminal Procedure.

[5] Kentucky Revised Statutes.

belief. *James v. Commonwealth*, 360 S.W.3d 189, 194-95 (Ky. 2012); *see also Salsman v. Commonwealth*, 565 S.W.2d 638, 641 (Ky. App. 1978).

Sexual abuse and sodomy similarly require only the satisfaction of two elements. KRS 510.110(1)(a) states in relevant part that sexual abuse in the first degree occurs when "[h]e or she subjects another person to sexual contact by forcible compulsion[.]" The term "sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party." KRS 510.010(7). Meanwhile KRS 510.070(1), in relevant part, defines sodomy in the first degree as "deviate sexual intercourse with another person by forcible compulsion." Both statutes require the jury to find forcible compulsion. Our thorough review of the record confirms that the testimony at trial by both R.C. and J.S. was sufficiently particular to allow a reasonable jury to have found Drace guilty as to each count.

Finally, as to the six counts of Incest for which Drace was convicted, they are adequately proven by R.C.'s testimony at trial and Drace's admission that she was his stepdaughter and that he was married to her mother during the period in which the abuse took place. KRS 530.020(1). The incest charges serve as derivatives in this case because they were contingent on the jury finding that Drace committed the underlying offenses of rape and sexual abuse. Because we find that the Commonwealth carried its evidentiary burden as to those underlying charges we will not disturb the jury's conclusions regarding incest.

7

### III.    Conclusion

For the reasons stated above, we affirm the trial court's denial of a directed verdict as to the four counts of rape in the first degree against R.C.; two counts of sexual abuse in the first degree against R.C.; two counts of sodomy in the first degree against R.C.; six counts of incest against R.C.; and finally, six counts of sexual abuse in the first degree against J.S.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Benjamin Jason Early
Law Office of B.J. Early, PLLC


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Kristin Leigh Conder
Assistant Attorney General