RENDERED:  MAY 1, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0598-MR

COMMONWEALTH OF KENTUCKY          APPELLANT

FROM SCOTT CIRCUIT COURT
v.         HONORABLE KATHRYN H. GABHART, JUDGE
ACTION NO. 24-CR-00420

CHRISTOPHER PEDERSON          APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND L. JONES, JUDGES.

JONES, L., JUDGE:  The Commonwealth brings this interlocutory appeal, pursuant to Kentucky Revised Statutes (KRS) 22A.020, challenging the trial court's intended jury instructions for rape in the third degree of an individual with an intellectual disability.  After careful review of the briefs, record, and law, we reverse.

At issue is the proper instruction for two counts of rape in the third degree for "engag[ing] in sexual intercourse with another person who is incapable of consent because he or she is an individual with an intellectual disability[.]" KRS 510.060(1)(a) (as applicable in 2018 prior to an amendment effective July 14, 2018). We begin with an overview of the evolution of relevant Kentucky law.

KRS Chapter 510 defines sex crimes in the Commonwealth. The victim's lack of consent to the sexual act is a required element of every offense in the chapter. KRS 510.020(1). Pertinent to this case, a lack of consent results from the victim's incapacity to consent. KRS 510.020(2)(b).

When KRS Chapter 510 was enacted in 1974, the law provided that an individual with an intellectual disability[1] was deemed incapable of consent. KRS 510.020(3)(b) (1974). An individual with an intellectual disability was then defined as "a person who suffers from a mental disease or defect which renders him [or her] incapable of appraising the nature of his [or her] conduct." KRS 510.010(4) (1974). In 1988, the definition was amended to its current form: "a person with significantly subaverage general intellectual functioning existing concurrently with defici[encies] in adaptive behavior and manifested during the

---

[1] The historic statutes used different terminology, but we have elected to use only the current term, adopted in 2012, of an "individual with an intellectual disability" in this Opinion both for clarity and preference.

developmental period[.]" KRS 510.010(5) (1988).

Except for various non-substantive changes, the law remained static until 2018, when the General Assembly passed Senate Bill (SB) 19. Effective July 14, 2018, SB 19 amended KRS 510.020(3)(c) to instruct that "[a] person is deemed incapable of consent when he or she is[] [a]n individual unable to communicate consent or lack of consent, or unable to understand the nature of the act or its consequences, due to an intellectual disability[.]" 2018 Ky. Acts Ch. 109, § 7. The legislature also increased the penalties for sex crimes against an individual with an intellectual disability, relevantly amending the offense of rape from a third-degree Class D felony to a second-degree Class C felony. *See* KRS 510.050(1)(b); 2018 Ky. Acts. Ch. 109, §§ 1 and 2.

In conformity with SB 19, Pederson was initially charged with two counts of rape in the second degree,[2] but the charges were subsequently amended to rape in the third degree by a supersedeas indictment because the alleged events occurred in the spring of 2018 before the amendment to KRS 510.050 became effective on July 14, 2018. Prior to trial, Pederson filed a motion requesting the trial court instruct the jury of the law as it existed prior to SB 19. He argued that pursuant to *Salsman v. Commonwealth*, 565 S.W.2d 638, 640 (Ky. App. 1978), the law necessarily required an instruction that an individual with an intellectual

---

[2] Scott Circuit Court Action Number 22-CR-00448, dismissed April 11, 2025.

disability "is incapable of consent if they are incapable of appraising the sexual nature of the act being performed."

The Commonwealth responded, agreeing the law prior to SB 19 applied to the charged crimes. The Commonwealth, however, asserted that Pederson's proposed definition for the term "incapable of consent" was contrary to law, because the applicable statutes provide that an individual with an intellectual disability, as defined by KRS 510.010(4), is deemed incapable of giving consent to a sexual act.

Pederson replied in support of his requested instruction. Therein, he claimed the *Salsman* Court had rejected the Commonwealth's interpretation of the law and set forth a clear and functional test that must be applied. Finally, Pederson asserted that the failure to give his requested instruction would deprive him of a unanimous verdict.

On April 21, 2025, the trial court ordered the jury instructions would define "incapable of consent" as being "unable to understand the nature of the act due to an intellectual disability." The trial court explained its intended instruction incorporated the SB 19 amendment and was consistent with both Pederson's proposed instruction and the reasoning of *Salsman*. Finally, the trial court determined the intended instruction was necessary to secure Pederson's right to a unanimous verdict. The Commonwealth timely brought this interlocutory appeal.

As an initial matter, we must determine our standard of review. The Kentucky Supreme Court stated, "a trial court's decision on whether to instruct on a specific claim will be reviewed for abuse of discretion[, and] the substantive content of the jury instructions will be reviewed *de novo*." *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015), *overruled on other grounds by Univ. Med. Ctr., Inc. v. Shwab*, 628 S.W.3d 112 (Ky. 2021). Here, the Commonwealth argues the trial court's intended instruction is contrary to law, rendering our review *de novo* and not, as Pederson has asserted, an abuse of discretion. Likewise, whether a jury instruction violates a defendant's right to a unanimous verdict is a question of law reviewed *de novo*. *Sexton v. Commonwealth*, 647 S.W.3d 227, 231 (Ky. 2022). With this standard in mind, we will review in turn the trial court's assertions that its intended instruction was required by *Salsman* and SB 19 or that it was otherwise necessary to secure Pederson's right to a unanimous verdict.

Pederson claims the *Salsman* Court rejected a categorical rule that an individual with an intellectual disability, as defined by statute, is incapable of consenting to sexual acts and instead crafted a test for determining when such a person may nonetheless consent. This contention is wholly without merit, and we agree with the Commonwealth that *Salsman* does not require the trial court provide the intended jury instruction.

-5-

True, the *Salsman* Court stated "[i]n determining whether a woman is incapable of granting consent because she is [an individual with an intellectual disability], the sole question is whether she is capable of appraising the nature of the sexual act being performed." 565 S.W.2d at 640. However, the *Salsman* Court was merely applying the statutory law *as it existed prior to the 1988 amendment* that removed from the definition of an individual with an intellectual disability the operative language of "incapable of appraising the nature of the conduct." The Court did not announce a standard of law, and *Salsman* has no precedential implications on the matter at bar.[3]

Similarly, we agree with the Commonwealth that SB 19 does not require the trial court's intended instruction. SB 19 became effective after the charged events are alleged to have occurred. Pursuant to KRS 446.080, changes in law are only retroactive if specifically designated by the legislature, and the legislature did not designate SB 19 as applying retroactively. Further, pursuant to KRS 446.110, new laws shall not be construed as repealing former laws as to offenses or penalties. A specific exception to this rule permits a defendant to affirmatively elect to be sentenced under a new law that mitigates punishment in any judgment pronounced after the change takes effect. *Id.* Here, however, the

---

[3] Because we reject Pederson's claim that *Salsman* established a test for incapacity to consent, we do not address his arguments that the legislature acquiesced to this interpretation.

amended definition for incapable of consent does not mitigate punishment, and Pederson affirmatively stated his intention to be sentenced under the prior existing law. Thus, SB 19 does not require the trial court's intended instruction.

Finally, we disagree that the trial court's intended instruction is necessary for unanimity of verdict. A criminal defendant is guaranteed a unanimous jury verdict. *Johnson v. Commonwealth*, 676 S.W.3d 405, 411 (Ky. 2023) (citing *Ramos v. Louisiana*, 590 U.S. 83, 93 (2020), and KY. CONST. § 7). The Supreme Court of Kentucky has identified three types of unanimity violations that can occur in jury instructions: (1) when multiple counts of the same offense do not include an identifying characteristic in each instruction; (2) when multiple criminal acts by the defendant may satisfy a single jury instruction; and (3) when an instruction permits a conviction of a single offense under multiple alternative theories and the evidence does not support all theories. *Id.* at 410-11.

Pederson, citing generally to the third type of unanimity violation involving multiple alternative theories, argues that without the trial court's intended instruction clarifying what constitutes "incapable of consent," the jury would have no fixed standard to determine what level of intellectual disability is legally sufficient and could potentially employ twelve different standards. This argument fails both because Pederson's claim does not fall within an accepted

unanimity violation type and because his contentions are refuted by a plain reading of the applicable statutes.

The Commonwealth has alleged only a single legal theory: that Pederson committed third-degree rape when he had sexual intercourse with a person incapable of providing consent because she is an individual with an intellectual disability as defined by statute. Accordingly, Pederson's assertion of an unanimity violation based on multiple alternative theories is meritless. And while he does not refer to the two other types of unanimity violations, neither is applicable.

Moreover, we reject Pederson's contention that without the intended instruction, the jury would have no guidelines for determining his guilt. KRS 510.010(4) provides a thorough definition for who qualifies as an individual with an intellectual disability.[4] KRS 510.020(3)(c) then expressly states such persons are incapable of consenting and incapacity to consent satisfies the "lack of consent" element inherent in every KRS Chapter 510 offense. "When the words of a statute are clear and unambiguous and express legislative intent, there is no room for construction or interpretation and the statute must be given effect as written."

---

[4] Pederson routinely disregards the definition in his argument seemingly for no purpose other than to raise the specter of rampant and unjust prosecution. For example, Pederson argued the statute prohibits a person with any intellectual disability or a mild intellectual disability from engaging in a loving and sexual relationship. This, however, is contrary to the plain language of KRS 510.010(4) which requires "significant[] subaverage general intellectual functioning[.]" He also repeatedly referenced mental illness, which is inapplicable to this case.

*Johnson v. Branch Banking & Trust Co.*, 313 S.W.3d 557, 559-60 (Ky. 2010) (internal quotation marks omitted) (quoting *White v. Check Holders, Inc.*, 996 S.W.2d 496, 497 (Ky. 1999)).

Here, the trial court's intended instruction authorizes the jury to determine that, even though the victim is an individual with an intellectual disability deemed incapable of consent as a matter of law, the victim nevertheless can consent if the Commonwealth does not prove to the jury's satisfaction that the victim did not appreciate the nature of the sexual act. This is contrary to the plain language of the statutes as they existed in 2018 prior to SB 19 and impermissibly heightens the Commonwealth's burden of proof. The trial court's intended instruction is therefore erroneous.

## CONCLUSION

While "[we] have considered the parties' extensive arguments and citations to authority,] [we have] discuss[ed] only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W. 3d 24, 29 n.1 (Ky. App. 2021). For the foregoing reasons, the judgment of the Scott Circuit Court is reversed and the case is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

Shawn D. Chapman
Deputy Solicitor General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Gregory Coulson
Lexington, Kentucky